## The Illinois Central Railroad Company
### *v.*
### Ellen V. Hatter.

*Opinion filed February 17, 1904.*

1. APPEALS AND ERRORS—*when appeal in trespass is properly taken to Supreme Court as involving freehold.* Where a declaration in trespass alleges that the plaintiff has been in adverse possession of the premises for more than twenty years, and the defendant files the general issue and a special plea of *liberum tenementum*, to which a replication concluding to the country is filed, the ownership of the freehold is involved and a direct appeal lies to the Supreme Court

2. LIMITATIONS—*mere possession does not satisfy the requirements of the statute.* Possession such as is contemplated by the Statute of Limitations must be adverse, actual, visible, exclusive, continuous and under a claim of ownership.

3. SAME—*what does not tend to show claim of title.* The fact that an agent, in constructing a fence without the knowledge of his principal, assumed that the latter was claiming title to the strip of land enclosed does not tend to show such claim.

4. SAME—*effect where tenant of grantor is in actual possession.* The fact that a tenant of the grantor is in actual possession of a strip of land not included in the terms of the deed is simply a circumstance to be considered by the jury in determining whether possession of such strip was actually delivered by grantor to grantee.

5. SAME—*when possession of grantor cannot be tacked to possession of the grantee.* Where a strip of land is not included in the deed, the grantor's possession thereof cannot be tacked to the possession of the grantee, unless such possession was actually delivered by the former to the latter.

APPEAL from the Circuit Court of JoDaviess county; the Hon. R. S. FARRAND, Judge, presiding.

This is an action of trespass *quare clausum fregit,* brought by appellee, against appellant, in the circuit court of JoDaviess county, to the February term, 1902, of that court. The declaration consisted of one count, alleging title, by adverse possession, to a strip of land adjoining appellant's depot platform in the city of Galena, and charging appellant with tearing down a fence and chopping down a large shade tree on such strip, throwing both on adjoining land of appellee, and erecting on the strip a tight-board fence, without permission from appellee. Appellant filed a plea of not guilty and a plea of *liberum tenementum.* The cause was tried before a jury and a verdict of $650 rendered. Appellee remitted $350 of this amount, and after overruling motions for a new trial and in arrest of judgment the court entered judgment for $300 in favor of appellee. The appeal is directly from that judgment to this court.

Ellen V. Hatter, the appellee, lives in Galena, Illinois, immediately adjoining the Illinois Central depot. The depot is located on a lot north of the building occupied by Mrs. Hatter. West of this depot and of the property of appellee, and extending the entire distance along the west end of appellee's property, is a platform belong-

ing to the railroad company. Between the property of appellee and the platform, and south of appellee's house, there was, prior to the trespass complained of, a picket fence, which enclosed appellee's property on the west side, south of her house. This fence was about 5.2 feet east of the outer edge of the platform at its south end and 5.8 feet at the north end. East of this fence, and within the right of way, was an elm tree, which shaded the porch of appellee. About December 9, 1901, the servants of appellant, without permission from appellee and against her protests, removed this fence, cut down the elm tree and erected a board fence, the south end of which is about twelve feet from the platform and the north end fourteen feet, and just within the line of the right of way as conveyed by Mrs. Wight.

Appellant, on March 13, 1854, obtained a deed from Lucy N. Wight, conveying to it, with other property, this strip of land, which was part of its right of way, and appellant claims that it was exercising its right in doing the acts complained of. Appellee purchased the property occupied by her from M. L. Johnson in 1896. Johnson had obtained a deed for the same property from Lucy N. Wight in 1894. Both of these latter deeds conveyed only property east of the right of way of the railroad.

About 1854 a railing was placed along the east side of the platform by the railroad company, and in 1866 or 1867 the fence on the south side of appellee's property and the fence immediately south of her house were each continued west until they connected with this railing, so that the railing constituted the west enclosure for the property. This railing was removed at some later period, just when does not appear from the record. Some time about the year 1880, and probably previous thereto, Johnson, who was in charge of Mrs. Wight's business and who was her agent, erected a fence about five feet east from the platform and almost parallel therewith, as he testified, so that persons on the platform could not sit

on the fence and whittle it. He further testified that the improvements and possession of the strip in dispute were continuous for thirty-five years that he remembered of, and that no other person exercised any ownership over it during that period. Other testimony shows that there was a low place near the platform, partly on this strip but principally on the adjoining land, and that appellee, Johnson and Mrs. Wight had caused earth to be hauled and used in filling the low place almost to the fence which was removed by appellant, and that the agent for the company saw this work being done and made no objection, and that appellant had used this hole as a dumping place for cinders. It also appeared that appellee had cultivated the tract of land in dispute during the last few years, and had raised vegetables thereon.

W. J. KNIGHT, and W. T. HODSON, (J. M. DICKINSON, of counsel,) for appellant.

SHEEAN & SHEEAN, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is suggested by appellee that this appeal should have been taken to the Appellate Court, and it is said that the suit is for an injury to the possession; that it is a possessory action brought for a trespass *vi et armis;* and it is argued that having been in possession, the plaintiff is entitled to recover for the injury to the possession even though the defendant was the owner of the freehold and entitled to the possession, and appellee asserts that this is an action of trespass *vi et armis*—not of trespass *quare clausum fregit.* The latter is the technical name of that form of trespass *vi et armis* which is brought for violent or forcible injury to real property. (21 Ency. of Pl. & Pr. p. 786.) The pleader in this instance seems to have followed the form given by Puterbaugh's Common Law Pleading and Practice at page 577, (third edition,) for a declaration in trespass *quare clausum fregit,* except

that instead of averring, in so many words, that the plaintiff is the owner of the premises, it is alleged that she and her grantor have been in the adverse possession thereof for more than twenty years, from which it would appear that the claims of all other persons thereto had been barred. It is evident that the action is for trespass *quare clausum.*

The defendant interposed the general issue and a special plea, *liberum tenementum.* To the latter plaintiff filed a replication concluding to the country. This special plea presented a perfect defense to the action, and the appeal was properly taken from the circuit court to this court, one question in the case being, who is the owner of the freehold to which the trespass is alleged to have been committed? *Piper* v. *Connelly*, 108 Ill. 646.

On this phase of the litigation, appellee places great reliance on the case of *Illinois and St. Louis Railroad and Coal Co.* v. *Cobb*, 68 Ill. 53. In that case the only plea was the general issue, and the court there calls attention to the fact that "the defendant did not seek to show any proper title to the premises."

On March 13, 1854, Lucy N. Wight, then the owner of lots 2 and 3 in block 5, in the city of Galena, conveyed to appellant a right of way through these lots. This right of way runs in a northerly and southerly direction. The passenger depot of appellant is on the lot next north, and the passenger platform, built some time about 1854, extends south on the east side 'of the railroad tracks entirely across lots 2 and 3. The east edge of this platform, where it crossed lots 2 and 3, was about fourteen feet inside the east line of the right of way. A railing was built by the company along the east edge of this platform from about the middle of lot 2 south to a point near the south line of lot 3, for the apparent purpose of preventing passengers or others upon the platform stepping or falling off the east edge of the platform, there being a descent of about two feet there to the ground.

About 1866 Mrs. Wight, being still the owner of that portion of lots 2 and 3 lying east of the right of way, fenced the same. She did not, however, put a fence along the line of the right of way on the east side of the platform, but, instead, joined her fences to the ends of the guard rail above mentioned, thus including in her enclosure the strip fourteen feet in width, and extending from the place where her fence joined the guard rail on the north to the place where her fence joined it on the south. She made no further conveyance affecting her title to lots 2 and 3 until July 13, 1894, when she conveyed her title therein to Madison L. Johnson, her grandson. Prior to this last mentioned conveyance Johnson had been acting as her agent, and in 1880 he constructed a fence about five feet east of the guard rail and practically parallel therewith, which left an unenclosed strip of that width between the platform and the new fence, and this fence remained on that line until the time of the occurrences which occasioned this suit.

At the time Mrs. Wight's fences were joined to the guard rail there was a hole or depression several feet in depth, beginning about five feet east of the platform and extending further east. This depression was circular in form and its extent is uncertain from the evidence, the testimony of one witness fixing its diameter at about fifteen feet and that of another at about forty feet. In any event, its greater extent was east of the right of way. This was so low that it frequently contained stagnant water. The health officers complained about it. Mrs. Wight, through her agent, caused earth to be put in it and the defendant made it a dumping place for cinders.

Appellee, on the trial, sought to show a title by adverse possession to this strip in herself by tacking the possession of Mrs. Wight, Madison L. Johnson and herself. We are of the opinion that the testimony fails to show the possession of Mrs. Wight to have been under a claim or color of title. At the time she fenced up to the

guard rail she had but recently conveyed the right of way to the company, and it is probable that she joined her fences to the guard rail as a matter of convenience, and because of the inconvenience of fencing through the hole on the line of the right of way. It does not seem that she would at that time set up a claim of ownership to this strip of ground which she must have known she herself had deeded to the appellant. Her acts, or those of her agents, in causing the depression to be filled are without significance. The greater amount of the filling was done on her side of the right of way line. The company assisted in the filling by throwing cinders there. The fact that she may have done more than her proportion of this work, if that be the fact, does not warrant the conclusion that she was claiming the strip of land then belonging to the appellant. It does not appear that she had any knowledge of the building of the fence, in 1880, by Madison L. Johnson at all. He says he built it where he did without regard to where the line was, because the guard rail was constantly being broken down, and he wanted the fence back from the platform where persons upon the platform would not be apt to destroy it. Except for these acts of the agents and employees of Mrs. Wight the record contains no evidence in reference to what she claimed about the ownership of this strip except that of Madison L. Johnson, who, in response to leading interrogatories propounded by counsel for appellee, testified on her behalf as follows:

Q. "Did Mrs. Wight claim up to the platform?

A. "Well, I don't know as she ever got out.

Q. "Well, you acted for her?

A. "Yes; I assumed we claimed it; yes sir."

It is apparent that Johnson did not know what his grandmother claimed. His assumption that she claimed title would not constitute a claim of title by her, and the testimony does not show that he was her agent for the purpose of determining whether she owned this strip or

for the purpose of making any claim in reference thereto. Johnson's testimony, in connection with the evidence of possession and filling the depression, is all the proof in the record from which any argument that Mrs. Wight claimed to own this strip can be deduced. It is not sufficient to sustain a verdict finding that her possession was adverse to appellant and under a claim of right. At most, it shows nothing more than possession. This is not enough. The evidence must go further and show that the possession was (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim of ownership. (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.) There is no evidence in this record showing that the possession of Mrs. Wight satisfied the fifth element, and as twenty years had not elapsed subsequent to the execution of her deed to Johnson, there was no evidence upon which the jury could rightfully find the title to this strip to be in appellee. Consequently there was no evidence upon which to base the fourth and fifth instructions given on the part of appellee, which submitted to the jury the question whether she had title by twenty years' adverse possession to this fourteen-foot strip.

Under the issues in this case, and in the absence of proof of twenty years' adverse possession, the second instruction given on appellee's part is also erroneous in so far as it permits the jury to award damages for the acts of the defendant in going upon this strip of land and doing the things it did upon that strip.

This record presents no defense whatever to the act of the railroad company in throwing the old fence and the shade tree on the land of Mrs. Hatter lying east of the boundary of the right of way, but there is no method by which this court can separate the damages allowed by the jury for that trespass, if any, from those which they have apparently allowed for a trespass to the fourteen-foot strip.

As the case must be submitted to another jury, we have examined the instructions refused which were offered by appellant. We think, so far as they stated correct principles of law, the subject matter thereof was fully covered by instructions given, except those stating the doctrine of tacking possession. Appellant was entitled to have the jury instructed that if the fourteen-foot strip in question was not conveyed by deed to Johnson and by deed from him to Mrs. Hatter, then the possession of Johnson and the possession of Mrs. Wight could not be tacked upon the possession of Mrs. Hatter, unless Mrs. Wight delivered to Johnson and Johnson delivered to Mrs. Hatter the possession of this strip of land; but the instructions which embodied this proposition also submitted to the jury the question whether, at the time of the delivery of the deeds, respectively, the strip was actually in the possession of a tenant of the grantor. We think this misleading. The jury was apt to conclude therefrom that if the actual possession was in the tenant there could be no delivery of the possession by the grantor to the grantee. This is not the law. The fact that the actual possession was in the tenant was merely a circumstance to be considered by the jury with the other evidence in determining whether or not the possession was delivered.

Complaint is also made that the court allowed counsel for appellee, in his closing argument, to make prejudicial and improper remarks to the jury. We are disposed to think that some of the language pointed out should not have been used, but as it will probably not be repeated on another trial, further discussion thereof would be profitless.

For error in giving the second, fourth and fifth instructions given on the part of the plaintiff below, the judgment is reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.        *Reversed and remanded.*