L. M. BRYAN, APPELLANT, V. ALEX REIFSCHNEIDER ET AL.,
APPELLEES.

150 N. W. 2d 900

Filed May 26, 1967. No. 36494.

Wright, Simmons & Hancock, for appellant.

Jack E. Lyman and Walter E. Gallawa, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

Plaintiff commenced this suit to quiet title against the defendants to a strip of land along the west side of a 40-acre tract to which plaintiff holds the legal title by a deed of conveyance. Defendants allege that they are the owners of a 20-foot strip of land along the west side of the 40 acres by adverse possession. The trial court found for the defendants and quieted title in them to the 20-foot strip. Plaintiff has appealed.

Plaintiff purchased the southeast quarter of the southeast quarter of Section 25, Township 22 North, Range 54 West of the 6th P.M., in Scotts Bluff County, Nebraska, in 1948. Defendants purchased the southwest quarter of the southeast quarter of Section 25, Township 22 North, Range 54 West of the 6th P.M., in Scotts Bluff County, in 1964. The common boundary of these two 40-acre tracts affords the situs of the dispute in the instant case. Plaintiff's west line and defendants' east line are a common boundary line between the two 40-acre tracts.

Defendants' immediate predecessors in title were as follows: Drexel J. Sibbernsen acquired title in 1928. In 1931, he conveyed the property to Marion T. Sibbernsen, who, in 1938, reconveyed it to him. Drexel J. Sibbernsen retained the title until his death in 1962. The executrix of his estate conveyed the land to Drexel J. Sibbernsen, Jr., and Everts S. Sibbernsen in 1964. Subsequently in 1964, the land was conveyed to the defendants. Prior to this conveyance, the 40-acre tract has been farmed by tenants, the Sibbernsens having been nonresident landlords at all times. The plaintiff's 40-acre tract ap-

pears to have been farmed by tenants although the plaintiff was a local resident.

There is no disagreement as to the location of the government survey line between the two 40-acre tracts according to the original government survey. Admittedly it is correctly shown on exhibit No. 1 contained in the record. Approximately 235 feet north of the south line of the two tracts, a feedlot on the west tract extends over the line into the east tract. The feedlot is about 135 feet in width and extends 9 feet across the line on the south and 7.2 feet on the north. The two points are connected by a straight fence or feedrack. This encroachment on the east tract has existed for many years.

For many years, the tenants on the west tract have used a road from their farmyard south of the feedlot to get to the north part of their farm. This road goes east around the feedlot protruding into the east tract, and turns to the northwest. The east edge of the road, as found by the trial court, is 20 feet east of the government survey line where it passes the feedlot. The evidence shows that two small buildings were located on this line extended south which were maintained by the defendants and their predecessors. The record shows and the plaintiff appears to concede that this 20-foot strip of ground south of the north edge of the feedlot has been acquired by the defendants by adverse possession. The issue here is the width of the strip of land north of the feedlot, if any, which has been acquired by the defendants. There is evidence that an old cedar post is located 62 feet north of the north fence of the feedlot and 20 feet east of the government survey line between the two tracts. There is evidence in the record that a fence once existed beginning at a point 20 feet east of the division line between the tracts on the south line of the east tract which extended straight north to the old cedar post, and continued straight north to the north line of the east 40-acre tract. There is also evidence that this fence was destroyed or removed many years ago. There is also

evidence of a stub fence, which enclosed nothing, which came from the north line for a distance of 500 or 600 feet. This fence was removed by plaintiff's tenant in 1951 and has not been in existence since that time. There is no evidence that defendants' predecessors in title ever claimed ownership of the land to this through fence to which the old cedar post is alleged to have been a part. The most that has ever been claimed by defendants and their predecessors in title was to the east edge of the farm road going north from the north fence of the feed-lot. It is the location of the road and not the old through fence that is important here. The evidence also shows that the plaintiff and his tenants have farmed their lands to the toe of the slope of the road and have used the road to turn their machinery in cultivating row crops.

In late 1964, the defendants did some leveling of their land. In doing so, they made a fill in a low area that extended over into the east 40-acre tract. It is the contention of the plaintiff that the defendants filled over the existing road and into the plaintiff's cornfield. It was the alleged encroachment of this fill upon the land of the plaintiff that brought about the present litigation. The defendants contend that the fill extended only to the east edge of the existing road to which they claim ownership.

The defendants became the owners of the west 40 acres in 1964. It is necessary for the defendants, to sustain their claim of ownership by adverse possession for the statutory period of 10 years, to tack on the adverse possession of the land by their predecessors in title. Plaintiff contends the right to tack the adverse possession by the predecessors in title has not been established by the evidence in this case.

The deed from the Sibbernsens to the defendants described only the southwest quarter of the southeast quarter of Section 25. Plaintiff asserts that there was no privity between the defendants and their predecessors

in title sufficient to permit tacking in establishing adverse possession.

A deed does not of itself create privity between the grantor and the grantee as to land not within the calls of the deed, but which may have been occupied by the grantor in connection therewith. Kramper v. St. John's Church, 131 Neb. 840, 270 N. W. 478. Possession cannot be tacked to make a title by prescription where the adverse occupant did not come in under another, and the deed under which the last occupant claims title does not include the land in dispute or show any privity between him and his grantor in regard thereto. Pohlman v. Evangelical Lutheran Trinity Church, 60 Neb. 364, 83 N. W. 201. The rule that the adverse possession of land cannot be extended beyond the calls of the deed means that possession by construction cannot be extended beyond the calls of the written instrument, but if land be actually occupied beyond the calls of the deed, hostile to the true owner, the deed does not preclude such occupancy from being adverse. The occupancy does not refer to the deed, but to the fact itself and its hostile character. Rice v. Kelly, 81 Neb. 92, 115 N. W. 625.

In order to tack the possession of predecessors in title to support a claim of adverse possession, each predecessor occupant must show derivative title from his predecessor in order to link his possession with that taken under a previous or original entry. Successive occupancies alone do not establish privity but only show a succession of independent trespasses. In the case before us, defendants cannot successfully claim that privity exists with their grantors as to land beyond the calls of the deed because of the deed alone since they have derived no rights thereto from the deed. Maas v. Platte Valley Public Power & Irr. Dist., 167 Neb. 124, 91 N. W. 2d 409. But if, in connection with the conveyance of the lands, there are circumstances showing an intent to transfer the possession of other adjacent land to the grantee which was occupied by the grantor, even though

not covered by the calls of the deed, there is created such a privity as to permit a tacking of possession for the purpose of establishing title by adverse possession.

It is the generally accepted rule, as well as the rule in this jurisdiction, that the taking of possession of contiguous lands, some of which are not within the calls of the deed, which have been used by the grantor as a unit and is apparent by reason of the location of fences, buildings, roads, or other evidence, and the transfer of possession pursuant to a deed or contract has evidentiary value as to the existence of privity. In order to permit the tacking of successive adverse possessions of grantor and grantee of an area not within the calls of a deed or contract, but contiguous thereto, the ultimate fact to be established is the intended and actual transfer and delivery of the possession of such area to the grantee as successor in ownership, possession, and claim. Privity means privity of possession. It is the transfer of possession, not title, which is the essential element. The privity required is that there must be a continuous possession by mutual consent, so that the possession of the true owner shall not constructively intervene. Ringstad v. Grannis, 171 F. 2d 170. Here the possession and use of lands beyond the calls of the deed were by the tenants of defendants' predecessors in title. The fact that the actual possession was in the grantor's tenants is merely a circumstance to be considered in determining whether or not the possession of the disputed strip was in fact delivered to the grantee. Illinois Central R.R. Co. v. Hatter, 207 Ill. 88, 69 N. E. 751. The foregoing rules for tacking adverse possession of land for the purpose of establishing ownership by prescription are supported by the authorities in this jurisdiction. Rice v. Kelly, *supra*; Frank v. Smith, 138 Neb. 382, 293 N. W. 329, 134 A. L. R. 458. See, also, Annotation, 17 A. L. R. 2d 1128.

The evidence here shows a conveyance of the west 40 acres to the defendants and the surrender of possession

to them. It was apparent that defendants' grantors intended to convey the strip of land outside the calls of the deed within the feedlot, the area on which the outhouse and tool shed sat, and the farm road used in farming the land. The circumstances surrounding the grant of title, surrender of possession, and the location of fences, buildings, roads, and other observable conditions, indicate an intent to convey title and possession to property beyond the calls of the deed. Such evidence will sustain a finding that defendants succeed to the entire possession of the grantors and that privity of possession existed between them.

We have examined the evidence in this case de novo as we are required to do. We find from the evidence that the defendants and their predecessors in title have never claimed title to lands in the southeast quarter of the southeast quarter to any fence or landmark north of the feedlot. The evidence does not support a finding that any of this land was ever used by the defendants for the purpose for which it is generally adapted. There is no evidence that the defendants and their predecessors in title ever farmed the lands in the east 40 acres to any fence or line in the manner required to give title by adverse possession. The evidence does sustain a finding that the defendants and the tenants of their predecessors in title did acquire title to a farm road by exercising exclusive control over it for a period of more than 10 years. But its open, notorious, exclusive, continuous, and adverse use was that of a farm road and nothing more. The testimony of witnesses and a photograph in evidence show that, after passing the feedlot, the road turned to the west close to the true boundary line. We hold, therefore, that defendants have gained title to the road by adverse possession, any use of the road by plaintiff and his tenants being shown to have been permissive only during the statutory period.

Exhibit No. 1 shows what we shall designate as stations on the government survey line between the two 40-

acre tracts. These stations are 100 feet apart, beginning at the southwest corner of the southeast quarter of the southeast quarter of Section 25 and are numbered consecutively on the government survey line going north from that point. As to the land north of the north line of the feedlot, we find that defendants have acquired title to the land lying west of the following line: Beginning at a point 20 feet east of the government survey line on the north line of the feedlot extended, then north to a point 18 feet east of the government survey line at station No. 5, then north in accordance with the dashed line and the widths designated at the stations shown thereon, such line showing the toe of the slope on the east edge of the road.

We affirm that part of the judgment quieting title in the defendants to the 20-foot strip of ground extending from the north line of the feedlot to the south boundary line of the southeast quarter of the southeast quarter. We reverse that part of the judgment awarding a 20-foot strip of ground to the defendants from the north line of the feedlot to the north boundary of the southeast quarter of the southeast quarter. We direct that a judgment be entered finding defendants to be the owners of the land by adverse possession west of the line set out in this opinion. We further direct that the judgment set forth such conditions and requirements as to fix the rights of the parties under the issues raised by the pleadings which are supported by the evidence.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.