**Vivian R. STERLING, Appellant,**

v.

**Richard E. TARVIN, Sr., et ux., Appellees.**

**No. 17129.**

Court of Civil Appeals of Texas, Fort Worth.

June 26, 1970.

Rehearing Denied July 17, 1970.

H. M. McPherson, Cleburne, for appellant.

Sam Cleveland, Stephenville, for appellees.

OPINION

BREWSTER, Justice.

This is a trespass to try title case.

The plaintiffs, Mr. and Mrs. Richard E. Tarvin, Sr., claimed to have acquired title to the land in dispute under the provisions of the 10 year limitation statute, Art. 5510, Vernon's Ann.Civ.St.

A jury trial was had and the jury found in answer to Special Issue No. 1 that plaintiffs and those under whom they claim had been in exclusive, peaceable and adverse possession of the land in controversy for a continuous period of 10 years before April 1, 1969, using or enjoying same during such 10 year period. This was the only issue in the charge that the jury was required to answer.

Based on this jury finding judgment for title to the land in dispute was rendered for plaintiffs and the defendant has brought this appeal.

Defendant in her Point No. 1 contends that the evidence offered during the trial was inadequate under Arts. 5510 and 5515, V.A.C.S., to make out an issue for the jury on the question of adverse possession in that it was lacking in showing (a) continuous and adverse possession and (b) exclusive possession.

We will here set out facts which we believe the record in the case shows to be undisputed.

During the last part of August, 1967, the plaintiffs had acquired title by deed of a tract of land consisting of approximately 84.6 acres. This tract was composed of a 42.7 acre tract and a 41.9 acre tract. The 42.7 acre tract lay on the east side of the 84.6 acre tract and the 41.9 acre tract was on the west side of it.

The following is the relevant history of the record title to the 42.7 acre tract:

On December 19, 1953, J. Dewey Walker deeded the 42.7 acre tract to the Veteran's Land Board (of Texas). The Veteran's Land Board then in 1953 entered into a contract of sale with one Lyman H. Garretson by which it sold this same 42.7 acre tract to Garretson. Garretson and his wife died in 1955 and on April 16, 1956, the administratrix of Garretson's estate sold and conveyed the interest of Garretson in the 42.7 acre tract to Richard E. Tarvin, Jr. On May 7, 1956, the administrator of Garretson's wife's estate sold and conveyed her interest in the same tract to Richard E. Tarvin, Jr. On August 11, 1967, the Veteran's Land Board deeded their interest in the 42.7 acre tract to Richard E. Tarvin, Jr., and he and his wife did on August 25, 1967, deed the tract to his parents who are the plaintiffs in the case.

The following is the relevant history of the 41.9 acre tract:

On December 19, 1953, J. D. (Dewey) Walker deeded it to the Veteran's Land Board. In December, 1953, the Veteran's Land Board entered into a contract of sale by which they agreed to sell and convey this tract to plaintiffs' son, Jack Tarvin. The Veteran's Land Board deeded this tract to Jack Tarvin in 1967 and on August 28, 1967, Jack Tarvin and his wife deeded it to his parents, the plaintiffs herein.

These two tracts of land adjoined each other. From 1953 down to April 1, 1969, these two tracts of land, together with the land in dispute, were enclosed inside one fence which completely surrounded them. There was no partition fence that separated any of these tracts from each other.

No part of the land in dispute was included in the descriptions contained in any of the deeds heretofore mentioned that are in plaintiffs' chain of title to the two tracts above described. The land in dispute lay immediately to the east of and adjoined

onto the east side of the 42.7 acre tract. Such land was included in the enclosure made by the fence that surrounded the 41.9 and 42.7 acre tracts. This fence around this land was a 4-strand barbed wire fence that was substantial enough to hold cattle.

The land lying immediately to the east of the tract in dispute had been owned since the 1930s by Mrs. Alta Reynolds Carlton. The deed by which she and her husband acquired that land called for 310 acres. Actually the land in dispute was included in the description in the deed by which Mrs. Carlton acquired title to her tract. On March 29, 1969, Mrs. Carlton, joined by her husband, B. B. Carlton, conveyed to the defendant herein, Vivian Sterling, 72 of her 310 acres. The disputed tract was included in the land described in this deed to defendant, Vivian Sterling. However, at no time from December, 1953, to April 1, 1969, was the land that is in dispute enclosed within the fences that surround Mrs. Carlton's property. Although the legal title to the disputed tract had apparently been in the defendant's parents since the 1930s, defendant had never been on such disputed tract prior to April 1, 1969.

Jack Tarvin acquired possession of the 41.9 acre tract about the end of 1953. His brother, Richard E. Tarvin, Jr., took possession of the 42.7 acre tract in May, 1956, which was the time that he acquired the Garretson interest in that tract by deed. Jack Tarvin never did claim the disputed tract for it was on the east end of the two tracts. From May, 1956 until he conveyed the 42.7 acres to his parents in 1967 Richard E. Tarvin, Jr., and his brother, Jack, grazed from 6 to 20 head of cattle and several horses on the two tracts and on the disputed tract and Richard claimed up to the east fence as being his land and he claimed it openly as against everyone. This included the land in dispute. During this entire time he grazed it and cut posts off it. He helped keep the east fence in repair. This was the only fence on the east side of the property and it had no gate through it.

His possession was peaceful during the entire time. No one else ever claimed the disputed tract during any of this time. He made the only use that could be made of the property and that was to graze it and cut cedar posts off it. This fence between the Carlton and Tarvin property was not a new fence even in 1953, the time the Tarvins first became connected with it.

The land in dispute had on it up until recently a deep draw. It was covered mostly with cedar and brush. The land was mostly caliche and had some grass on it that cattle grazed. It had little value up until recently when the Brazos River Authority constructed the dam that formed Lake Granbury. Now the waters of that lake fill the draw and the land has become quite valuable as being lake property.

Richard E. Tarvin, Sr., a plaintiff, was a former Fort Worth Assistant Police Chief. He retired in 1960 and he and his wife then moved to Granbury. From then until 1967 he and his wife looked after the property for their two boys, Jack and Richard E. Tarvin, Jr. The Tarvins bulldozed the east part of the property in 1962 or 1963. In 1967 he and his wife bought the enclosed property from their two boys. He and his wife have kept the east fence in repair for years. He has since getting the property in 1967 had possession of it and claimed everything to the fence lines. Prior to April 1, 1969, he has never known of anyone else making any claim to any of this disputed land adverse to the claims of plaintiffs and their boys. Mrs. Carlton, who conveyed the disputed tract to defendant on March 29, 1969, has called plaintiffs a dozen times since 1960, telling them that cattle had gotten through the east fence and asking them to repair it. This was the same fence that caused the disputed tract to be enclosed in plaintiffs' enclosure and was the only fence that separated the Carlton property from the Tarvin property.

About April 1, 1969, after getting her deed from her mother to the 72 acre tract, the defendant, Vivian Sterling, had her

tract surveyed. She then, without saying anything to the Tarvins, caused a bulldozer to doze down this fence that had separated the Carlton and Tarvin properties since prior to 1953. She then caused to be constructed a new fence along the west side of the tract in dispute and this resulted in the disputed tract being removed, from out of the Tarvin enclosure and placed within the fences that surround the defendant's 72 acre tract. The plaintiffs then filed this lawsuit on July 2, 1969.

Mrs. Carlton, the record owner of the disputed tract at all material times prior to March 29, 1969, actually knew that the Tarvins had actual possession of the property that is involved in this suit.

Appellant contends that her Point No. 1 should be sustained because the evidence in the case shows that the possession of plaintiffs and of those under whom plaintiffs claim of the land in dispute was not shown to be exclusive for any continuous 10 year period prior to April 1, 1969.

As grounds for this contention she says her mother and grantor, Mrs. Carlton, for the years 1954 up to and including 1969, leased the land in dispute to a tenant, Mr. Goforth. Each year or two during this period she executed a new written lease to Mr. Goforth covering her entire 310 acre tract, and the description of such tract included the tract in dispute.

As further grounds for such contention she says her mother and grantor, Mrs. Carlton, did in 1964 execute a written instrument granting an easement to Brazos River Authority to allow the waters of Lake Granbury to flow upon a part of the disputed tract.

And as further grounds for her contention that plaintiffs' possession was not exclusive, defendant urges the fact that on March 29, 1969, her mother, Mrs. Carlton, did execute and deliver to her a conveyance of land the description of which included the land that is in dispute.

The undisputed evidence in the case shows that Mr. Goforth, Mrs. Carlton's lessee from 1954 through 1969, never at any time had possession of the disputed tract. This was true even though the land described in his lease included it. No ouster of plaintiffs or their predecessors was ever made or attempted to be made by Mr. Goforth or anyone else by virtue of such leases.

The evidence also shows that no ouster of plaintiffs or their predecessors during the time in question of their possession of the disputed land ever occurred by virtue of the flowage easement that Mrs. Carlton executed to Brazos River Authority in 1964. The lake did not begin to fill until after April 1, 1969.

■ The actual ouster of plaintiffs by defendant from possession of the disputed tract on April 1, 1969, when she had the existing fence dozed and a new one built did not occur until after the time that the plaintiffs had already acquired title to the tract through the 10 year limitation statute. Such ouster therefore came too late and does not affect a decision in this case.

■ It is true that adverse possession of land can be interrupted by an ouster. But the conduct claimed by the record title holder to constitute an ouster must be of such a character that it would put a reasonably prudent person on notice that he had been ousted. City of Lufkin v. Dupuy, 327 S.W.2d 781 (Beaumont Civ.App., 1959, ref., n.r.e.).

■ The actual possession of the disputed tract was in no way affected prior to April 1, 1969, as a result of the execution of these written instruments. The mere execution by the record owner of the written leases to Goforth and of the flowage easement to the Brazos River Authority were insufficient to constitute an interruption of the possession of plaintiffs and their predecessors and were not sufficient

to keep their possession from being exclusive. 2 Tex.Jur.2d 166 (note 3).

Appellant's other contention under her first point is that the evidence was insufficient to show continuous and adverse possession by plaintiffs and their predecessors for the required period of time.

The plaintiffs did not actually take adverse possession of the tract in question for themselves until they purchased the 42.7 acre tract from their son, Richard E. Tarvin, Jr. in August, 1967. It was therefore necessary for them, in order to sustain their claims under the 10 year limitation statute, to tack their claim to that of their son, Richard E. Tarvin, Jr. His claim and his adverse possession had started when he acquired the 42.7 acre tract in May, 1956, and continued without interruption until August 25, 1967, when he deeded the 42.7 acre tract to plaintiffs and delivered possession of the disputed tract to plaintiffs. The possession and claim of plaintiffs continued from that date down to April 1, 1969.

Article 5516, V.A.C.S., provides: "Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

The deed from Richard E. Tarvin, Jr. to plaintiffs described the 42.7 acre tract but did not describe the land in dispute. The evidence shows, however, that when this deed to the plaintiffs was executed in August, 1967, possession of both the 42.7 acre tract and possession of the land in dispute were at that time delivered by Richard E. Tarvin, Jr. to the plaintiffs and plaintiffs kept adverse possession of the disputed tract up to April 1, 1969.

We hold that there was a privity of estate between Richard E. Tarvin, Jr. and the plaintiffs of both the 42.7 acre tract and the disputed tract. The plaintiffs are entitled to tack their period of adverse possession onto that of their son to get the full statutory 10 year period.

The clearest and most easily understood discussion that we have been able to find as to the law on the privity of estate or title that is necessary between successive adverse possessors in order to authorize joining together or tacking their several possessions so as to make them a continuous possession for the full statutory period is found in the case of Rich v. Naffziger, 255 Ill. 98, 99 N.E. 341 (1912). The following is from the opinion in that case:

"Where a person having title, by deed, to a lot or tract of land described in the deed also has inclosed with it and is in possession of adjoining land to which he has no record title, and conveys the land by the description in the deed and delivers with it the possession of the entire inclosure, the continuity of possession will not be broken, and the two possessions will be joined and considered as one continuous possession. This result, however, does not necessarily follow the making of the deed describing the land to which the grantor had paper title. The title to premises in possession but not described in the deed to the claimant does not depend upon a deed, but upon possession alone, and for that reason will not pass by a conveyance describing only the land to which the grantor has record title; but possession of the land not described in the deed must be delivered. The privity between two disseisors which will authorize tacking their possessions is not, therefore, established by a deed from one to the other. Illinois Central Railroad Co. v. Hatter, 207 Ill. 88, 69 N.E. 751.

"The deed is proper to be considered in determining whether possession of the land in the inclosure not described in the deed was taken at the same time as the possession of the land described therein, and where the deed is followed by the delivery of possession of the entire inclosure, it is sufficient evidence of a transfer of possession to raise the requisite privity between the parties. But a paper transfer is not necessary to connect adverse possessions. It may be a means in establishing the fact of privity, but is not the only means. Illinois

Steel Co. v. Budzisz, 106 Wis. 499, 81 N.W. 1027, 82 N.W. 534, 48 L.R.A. 830, 80 Am. St.Rep. 54. In discussing the circumstances under which the possession of disseisors may be joined, the Wisconsin Supreme Court said, in Illinois Steel Co. v. Paczocha, 139 Wis. 23, 119 N.W. 550: 'The only essential of the transfer is that the predecessor passes it to the successor by mutual consent, as distinguished from the case where a possessor abandons possession generally, and another, finding the premises unoccupied, enters without contract or relation with the former.' "

This case has been followed in Texas. See McAnally v. Texas Co., 124 Tex. 196, 76 S.W.2d 997 (1934).

Shuttles v. Butcher, 1 S.W.2d 661 (El Paso Civ.App., 1927, writ ref.), held in substance that land can be held by a grantee in privity with grantee's predecessors, even though it was not described in the deed to the grantee, if there was an actual transfer of the adverse possession of the disputed tract by grantor to grantee.

Since there was an actual delivery of the possession of the disputed tract to plaintiffs by their grantor, Richard E. Tarvin, Jr., the requirement that there be some type of transfer of grantor's rights to such land is satisfied under the holdings in the above cases.

The evidence is undisputed that one 4-strand barbed wire fence surrounded the 42.7 acre tract and the 41.9 acre tract and the disputed tract at all times material here. All 3 of these tracts were in the same enclosure. Until 1967 Jack Tarvin owned the 41.9 acre tract which was on the west side of the enclosure. The disputed area was on the east side of the enclosure and adjoined on the east side of the 42.7 acre tract. The disputed tract did not adjoin the 41.9 acre tract at all. Until 1967 Jack Tarvin owned the 41.9 acre tract and made no claim to the disputed tract. His brother, Richard E. Tarvin, Jr., claimed the disputed tract as his property

from May, 1956 to August, 1967, the time he transferred it to plaintiffs.

For cases holding that the facts outlined in the last paragraph above did not keep the adverse claim of Richard E. Tarvin, Jr. and his parents from ripening into title under the 10 year limitation statute, see Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139 (1917), and Esser v. Kneupper, 205 S.W. 508 (San Antonio Civ.App., 1918, writ dism.). The following is quoted from the opinion in the Esser case:

"The further contention is made that the possession was not adverse for the reason that the land in controversy is contained in an inclosure containing land owned by Peter Kneupper as well as that of Henry Kneupper, and such inclosure was jointly used by both of them for grazing purposes. The land in controversy was claimed by Henry Kneupper and not by Peter Kneupper. It was inclosed under the belief that it was a part of Henry Kneupper's survey, with the exception of the small parcel recognized to be a part of Gourley's survey. The use of such land by Peter Kneupper was in subordination to Henry Kneupper. The possession and use were sufficient under the statute to vest title by limitation in Henry Kneupper. Watkins v. Cates, 24 Tex.Civ.App. 384, 59 S.W. 1123; Parker v. Newberry, 83 Tex. 428, 18 S.W. 815; Glover v. Pfeuffer, [Tex.Civ.App.], 163 S.W. 984."

In connection with our consideration of appellant's Point 1 claiming insufficiency of the evidence to support the jury's answer to Issue No. 1 we have carefully examined the entire statement of facts and we conclude that the evidence is sufficient to support the jury's finding.

Appellant's Point 1 is overruled.

■ By her Point 2 appellant contends that the trial court erred in rendering judgment for the land described therein because it is not the same land described in the petition.

We have failed to find any material differences between the two descriptions.

Under this point appellant further contends that the description used in the judgment is an incorrect one. The surveyor, Dunaway testified that he made the plat that was in evidence as plaintiffs' Exhibit No. 1, and which plat is a part of the judgment in this case, that such plat is correct, and that it reflects the courses and distances as he actually measured them on the ground.

We therefore overrule appellant's Point No. 2.

■ Before announcing ready for trial the plaintiffs requested permission from the judge to amend the part of the original petition that described the tract in controversy by changing 3 calls in the description. The court granted plaintiffs leave to make these changes in the description.

The plaintiffs then announced "ready for trial." Defense counsel then announced "Ready subject to this—".

He then proceeded to make the following objection:

"MR. McPHERSON: Now comes the Defendant and excepts to the Court granting the Plaintiff the right to correct or to make certain changes and corrections in this original petition which was filed on July 21, 1969, that such changes completely changes the nature of Plaintiff's lawsuit and on the date of trial completely changes the description of the tract that he is claiming under his trespass to try title suit; that such changes were made more than three and a half months after the petition was filed and Plaintiff had ample time to make such changes and give the Defendant notice of what he was actually claiming under his lawsuit.

"THE COURT: Overruled."

The trial of the case followed this objection.

Appellant's Point No. 3 contends that the court's action in allowing this amendment and in overruling this objection was reversible error.

We overrule the point.'

It was obvious from the beginning to all involved in the case that the tract sought to be recovered was the same land that had formerly been in the Tarvin enclosure that defendant had placed in her own enclosure when she tore down the old fence and built the new one about April 1, 1969. This amendment in no way changed that fact. According to the testimony of the surveyor, Dunaway, the description as it read after the changes were made was the correct description of the tract that all parties knew was in controversy. The parties were in no way surprised by the amendment. No continuance was asked for by appellant after leave was granted to permit the amendment.

It was at least within the sound discretion of the trial court to permit the amendment in question. 46 Tex.Jur.2d 23, Pleading, § 206.

The record does not show that appellant made any objections at all to the court's charge. She did, however, file one instrument in which she made a single request over her counsel's signature that the court submit her requested Issue No. 3 and also 5 different legal definitions or instructions.

The court denied this request and appellant's Point 4 contends that this action was reversible error. We overrule this point.

The requested Issue No. 3 inquired as to whether the plaintiffs and those under whom they claimed title asserted adverse possession to the property involved against defendant and those under whom she claims such as was of such unequivocal notoriety that they would be presumed to have notice of such adverse possession and claim.

■ By Special Issue No. 1 of the charge the court had already submitted the adverse possession question to the jury in the form outlined in the third paragraph of

this opinion. It was, therefore, not error to refuse to again submit the same ultimate issue of adverse possession to the jury in a slightly different form, as contained in appellant's requested Issue No. 3.

■ The definitions requested were of peaceable possession, adverse possession, claim of right, and hostile. The last matter requested in this single instrument was a legal instruction.

The court's charge gave the following definitions:

"By the term 'peaceable possession' as used in this charge is such possession as is continuous and not interrupted by adverse suit to recover the land.

"By the term 'adverse possession' as used in this charge is meant an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another, and such land being enclosed by a substantial fence."

We are convinced that these instructions given were correct. No reversible error was committed by the court's refusal of the other requested instructions. See Houston Oil Co. of Texas v. Skeeler, 178 S.W.2d 740 (Amarillo Civ.App., 1944, no writ hist.).

There is another reason why the refusal to give appellant's requested Special Issue No. 3 and the series of requested instructions above set out was not error.

That is because they were all requested together in a single instrument over the signature of appellant's counsel. We have demonstrated that the trial court properly refused to give appellant's requested Issue No. 3.

■ ■ The applicable rule of law is that requested issues and instructions are required to be requested separately. A party that does not follow this procedure and makes a group request of a number of such items cannot complain on appeal of

their refusal by the trial court. This is especially true if the trial court is justified in refusing to give any of such requested items, as he was here. See Edwards v. Gifford, 137 Tex. 559, 155 S.W.2d 786 (1941) and Griffey v. Travelers Insurance Company, 452 S.W.2d 725 (Amarillo Civ. App., 1970, no writ hist.).

By her Point 5 appellant contends that the trial judge committed reversible error by rendering judgment in this case decreeing title to the land in plaintiffs because the undisputed evidence in the case shows that the Brazos River Authority is asserting a claim to a flowage easement on the part of the disputed tract that lies below 700 foot elevation. The contention made is that the Authority was a necessary party and that judgment could not be rendered without the Authority being in the case.

We are unable to find an assignment of error in the motion for new trial raising this matter. As far as we can tell it is being urged on appeal for the first time.

■ The following is from the opinion in the case of Aetna Life Insurance Company v. Creel, 390 S.W.2d 522 (Houston Civ.App., 1965, writ ref.):

"Appellee did not file in the suit in the District Court of Brown County a sworn pleading complaining of a defect of parties therein, as provided by Rule 93, Texas Rules of Civil Procedure, nor did he make any attempt to bring in additional parties before the case was called for trial, as provided by Rule 37, T.R.C.P. Appellee, therefore, waived his right to complain in the present suit of any absence or defect of parties in the divorce suit unless there was in such suit an absence of indispensable parties without which no valid judgment could be entered. An indispensable party is defined as '[A] party who has such an interest in the controversy or subject matter that a final adjudication cannot be made, in his absence, without injuring or affecting such interest.' 67 C.J.S. Parties § 1, p. 892; (cites cases)."

**538**

What was said there is equally applicable to this case. We are convinced that the Brazos River Authority was not an indispensable party to the trial of this case.

We are also convinced that even if error was committed in this respect, as urged by appellant, that it was certainly a harmless error in so far as she is concerned, and that it is a matter about which she cannot complain. Appellant's Point 5 is overruled.

The following was submitted as Issue No. 2 in the court's charge:

"Do you find from a preponderance of the evidence that the property line between the lands of the plaintiffs and defendant as shown by deeds in evidence, is located along the property line shown on the map prepared by Mr. Dunaway or is located along the line established by the new fence erected by Vivian R. Sterling? Answer: 'It is located along the property line shown on Mr. Dunaway's map,' or 'It is located along the line of the new fence.' Answer_____."

The issue was submitted in the charge conditionally upon the jury answering Issue No. 1 "No."

Issue No. 1 was the adverse possession issue. The jury answered that issue "Yes," and, therefore, in line with the court's instructions did not answer Issue No. 2.

In her Point 6 appellant contends that the trial court committed reversible error by submitting Issue No. 2 to the jury even though the jury did not answer it.

The record does not show that appellant made any objection to the court's charge. A party cannot complain on appeal of alleged errors in the court's charge unless he made proper objections to such charge in the trial court. See Rule 274, Texas Rules of Civil Procedure.

An additional reason why appellant's Point 6 must be overruled is because there is no assignment of error in her motion for new trial on which the point can be based.

An alleged error in the court's charge to the jury is not preserved for appellate review unless the matter is raised in an assignment of error in the motion for new trial. Rule 324, T.R.C.P. See also Manning v. Sears, Roebuck & Company, 417 S.W.2d 639 (Houston Civ.App., 1967, error ref.).

Appellant in her Point 7 contends that the trial judge committed an additional error by submitting Special Issue No. 1 of the charge to the jury.

As stated, appellant's counsel did not object to the charge. We, therefore, overrule this point. Rule 274, T.R.C.P.

The trial court's judgment is affirmed.