IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


PASEKA V. HALL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DONALD F. PASEKA AND JANIS M. PASEKA, TRUSTEES OF THE
PASEKA FAMILY REVOCABLE TRUST, APPELLANTS,

V.

BRUCE K. HALL, APPELLEE.


Filed June 2, 2020.    No. A-19-521.


Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Reversed and remanded for further proceedings.

David C. Mitchell and Spencer B. Wilson, of Yost, Schafersman, Lamme, Hillis, Mitchell, Schulz & Hartmann, P.C., L.L.O., for appellants.

Bradley D. Holtorf and Linsey Moran Bryant, of Sidner Law, for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Donald F. Paseka and Janis M. Paseka, as trustees of the Paseka Family Revocable Trust (the Trust), filed suit in the district court for Dodge County, Nebraska, seeking to quiet the title to a .73-acre parcel (the claimed tract), alleging they are the owners of the parcel by adverse possession. The court found in favor of Bruce K. Hall and dismissed the Pasekas' complaint with prejudice. The Pasekas appeal, and we reverse the order of the district court and remand the matter for further proceedings consistent with this opinion.

- 1 -

BACKGROUND

Paseka Farms, Inc. and Hall both own large parcels of land in Dodge County which are divided by an earthen berm. Immediately west of the earthen berm is the claimed tract, which is the subject of this dispute. Prior to trial the parties entered into a stipulation of facts which was received into evidence. Restated and summarized, the parties stipulated that the following facts were true:

(1) That the Pasekas, as trustees of the Trust, are owners of Paseka Farms.

(2) Paseka Farms has farmed all the tillable ground on the claimed tract from March 1, 2004, through February 28, 2015, in an open, obvious, continuous, notorious, exclusive, and adverse manner pursuant to three agricultural land leases comprising the entire period.

(3) From at least 1978 to the present day, neither Hall nor any of his predecessors in title, farmed any portion of the claimed tract.

(4) During the same period from 1978 to 2015, the Pasekas' predecessors in title, the O'Connors, either farmed all the tillable ground on the claimed tract or they leased all the tillable ground to third parties including the Pasekas.

(5) The use and occupation of the claimed tract for farming by the O'Connors and their tenants from 1978 through 2015 was open, obvious, continuous, notorious, exclusive, and adverse to the interests of Hall and his predecessors in title.

During trial additional facts were established. Hall inherited his parcel from his predecessors in title in 1999. Hall operates a business in Omaha, and he has always leased his acres to a tenant, Taylor Farms. The ground Hall inherited actually includes the claimed tract in dispute which is described in a survey Hall commissioned in June 2014. Neither Hall nor his tenant have ever farmed the claimed tract. Hall commissioned the survey of his property in 2014 because he was eager to dig an irrigation well for a center pivot system and he wanted to be sure to place the well in the proper spot. Hall acknowledged he did not pay much attention to the farm ground until he started spending "a lot of money" on the irrigation project. Hall said he paid Taylor (his tenant) to pay attention to the property because he was "spending 99 percent of [his] time doing other things."

On June 27, 2014, during the pendency of the Pasekas' third lease with the O'Connors, the O'Connors put their farms up for auction, which included all the ground described in the lease with the Pasekas who thought to include the claimed tract. The Pasekas continued to farm the claimed tract because the O'Connors had been farming that parcel since at least 1978 and the Pasekas believed they were responsible for everything the O'Connors had farmed. Donald Paseka testified that he never had reason to believe that any of the land west of the berm was not owned by the O'Connors. He noted that the berm was 3 to 4 feet tall and that there was no access to the claimed tract from the Hall tract on the other side. However, as was determined subsequently, the property line included in the legal description did not track completely with the berm. Therefore, although the Pasekas' knowledge and years of experience farming the leased property had led them to believe that the legal description tracked with the berm, the legal description on the sale bill did not in actuality include the claimed tract.

The day before the auction the auctioneer was contacted by Hall and advised that Hall's June 2014 survey established the claimed tract was actually part of his inherited parcel. The day of the auction Hall brought a copy of the survey to the auction and the auctioneer announced to those gathered that a copy of the survey was available for review because there may be a question as to the exact location of the boundary line. The auctioneer told the bidders the property would be sold "subject to the survey."

Donald was the successful bidder on two of the three parcels of farm ground sold on June 27, 2014, including the parcel to which the claimed tract is attached. Donald acknowledged being made aware of the description and boundary issues as to the claimed tract but the surveyor was not present at the auction so there was nobody to talk to about it. "You either bid and buy the property or you don't."

In August 2014, while Donald was spraying weeds on his newly purchased parcel which included the claimed tract, he noticed an aluminum stake in his bean field. Donald pulled it out and put it on the berm which divides his parcel from Hall's. Donald had a conversation with Hall about the stake and learned Hall was making a claim for the claimed tract. After the 2014 harvest three more large steel "T" posts appeared in what Donald believed to be his ground. In the spring of 2015, Donald applied fertilizer and pre-emergent herbicide in preparation for corn planting because he "assumed that all the farm ground that had been farmed [for 30 years]" was the ground he purchased at auction. Donald noticed a large dirt moving machine in the area of the claimed tract and discovered Hall was digging a drainage trench. The trench was very steep and came right up to the surveyed boundary between the parcels so it now appeared impossible to turn a tractor around between the trench and the berm. Donald estimated he lost 3 feet of tillable ground on his side of the trench due to the possibility of the ground next to the trench giving way if driven over. Donald did not expect any of the boundary to be in the tillable ground but thought it might have been in the berm nearby. Donald testified Hall could not access the claimed tract without trespassing on the Pasekas' parcel.

## ASSIGNMENTS OF ERROR

The Pasekas assign as error the district court's finding that they were not in actual, continuous, exclusive, notorious, and adverse possession of the claimed tract under a claim of ownership for the required statutory period of 10 years. We do not address the assignments related to trespass, ejectment, and temporary and permanent injunction but instead leave those matters for the district court on remand.

## STANDARD OF REVIEW

A quiet title action sounds in equity. In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998).

ANALYSIS

It is well settled in Nebraska that a party claiming title to real property through adverse possession must prove by a preponderance of the evidence that the possession of the property has been actual, continuous, exclusive, notorious, and adverse to the rights of the actual owner for a period of 10 years. *Id*. Possession is the key element in a claim of adverse possession. *Nennemann v. Rebuck*, 242 Neb. 604, 496 N.W.2d 467 (1993). And the evidence in this case clearly establishes the O'Connors and the Pasekas had farmed the disputed tract from 1978 through 2015. See *Rush Creek Land & Livestock Co. v. Chain*, 255 Neb. 347, 586 N.W.2d 284 (1998) (tenant may adversely possess real property in name of his landlord). Hall did not realize the tract was part of his inherited parcel until 2014.

The district court concluded that the "record [was] absent of any evidence that the O'Connor family intended to possess the disputed tract through adverse possession" and the evidence received was "contrary to the premise that the O'Connors intended to pass on a claim of adverse possession to the [Pasekas]." The district court noted that the "disputed tract was not contained in any deed or lease agreement between the O'Connor family and the [Pasekas]." The district court also referred to the announcement at the auction that the 40-acre parcel being sold was subject to the boundary survey and the ".73 acre disputed tract [was] not contained within the description of the land that was sold at auction." The district court also emphasized that the June 27, 2014, purchase agreement for the 40 acres did "not include the disputed tract." The court added that "[t]he affidavit and the title certificate documents do not mention the disputed tract, nor do they indicate that the disputed tract was meant to be part of any of the land conveyed at the auction sale," and Hall "did not acknowledge nor was he put on notice that there was a claim of adverse possession against the disputed tract until he received the Trustee's Quitclaim Deed in 2015." Based on these reasons, the district court determined that the Pasekas failed to meet their burden "that the O'Connor's [sic] possession of the disputed tract was adverse under a claim of ownership and as such it cannot be tacked on by the [Pasekas] to establish the requisite [s]tatutory ten-year period necessary to perfect title under a claim of adverse possession."

We find the stipulation entered into by the parties to be especially persuasive in establishing the elements of an adverse possession claim. We also find the stipulation overcomes the district court's rationale for declining to find the O'Connors transferred and delivered possession of the claimed tract to the Pasekas by virtue of the language contained first in the leases and then in the deed following the auction. The ultimate fact to be established is the intent of the transfer and delivery of the possession of ground so the possession of the true owner does not intervene. *Bryan v. Reifschneider*, 181 Neb. 787, 150 N.W.2d 900 (1967). We believe the stipulation and the evidence produced at trial, including the leases and the sale bills, establishes that the O'Connors clearly intended to transfer the disputed tract to the Pasekas, which the O'Connors had adversely possessed since 1978. The fact that the sale bill and the deed following the auction did not include the legal description of the disputed tract "does not preclude such occupancy from being adverse. The occupancy does not refer to the deed, but to the fact itself and its hostile character." *Id.* at 791, 150 N.W.2d at 904.

The district court relied on *Bryan v. Reifschneider, supra*, to come to the opposite conclusion. As noted above, the district court found there was insufficient evidence that the O'Connors intended to transfer possession of the disputed tract to the Pasekas as their successor in ownership and possession because the tract was not described in the lease agreements or the deed prepared after the auction and that the auctioneer noted that the sale was proceeding subject to the potential issue raised by the survey. The district court said this failure prevents the Pasekas from "tacking" their "adverse possession" of the tract on to the O'Connors' "adverse possession" sufficient to permit the court to quiet the title to the tract in the Pasekas.

We read *Bryan v. Reifschneider, supra*, to instruct that if there are circumstances showing an intent to transfer possession, even though the land is not described in a lease or deed, there is sufficient privity to permit "tacking" for the purpose of establishing title by adverse possession. *Id.* at 791, 150 N.W.2d at 904. Among the factors to be considered as to whether the taking of lands contiguous to the "calls of the deed" are whether those lands have been used by the grantor and are apparent by reason of the location of fences, buildings, roads, or other evidence. *Id.* When the O'Connors leased their parcel to the Pasekas it was the Pasekas' expectation that they would continue to farm the claimed tract since the O'Connors "had always farmed" the tract. The photographs received into evidence demonstrate that a well-defined berm existed between the land farmed by Hall's tenants and his predecessors and the land farmed by the Pasekas and the O'Connors. This berm was the de facto boundary going back to at least 1978. The leases between the O'Connors and the Pasekas were executed to facilitate the O'Connors' retirement. We note that a tenant may adversely possess real property in the name of his landlord. See *Bryan v. Reifschneider, supra*. See, also, *Thornburg v. Haecker*, 243 Neb. 693, 502 N.W.2d 434 (1993). After purchasing the property, the Pasekas carried on as always.

We believe the Pasekas have established the necessary privity with the O'Connors to permit tacking. *Bryan v. Reifschneider, supra*, explains that "privity" means "privity of possession. It is the transfer of possession, not title, which is the essential element. The privity required is that there must be a continuous possession by mutual consent, so that the possession of the true owner shall not constructively intervene." *Id.* at 792, 150 N.W.2d at 904. Having established the O'Connors' intent to transfer possession of the claimed tract and the Pasekas' privity to the O'Connors, we believe the Pasekas are able to sustain their claim of ownership of the claimed tract by adverse possession.

In this case, as in *Bryan v. Reifschneider*, 181 Neb. 787, 150 N.W.2d 900 (1967), the evidence establishes that the O'Connors, and the Pasekas after them, "possessed" the claimed tract openly, notoriously, exclusively, adverse to the interest of the true owner, and continuously for the full statutory period. The O'Connors farmed the parcel which included the claimed tract since 1978 and the Pasekas took over from 2004 through 2015. Hall never claimed title to the claimed tract, nor has he ever used it for the purpose for which it was generally adapted. See *Bryan v. Reifschneider, supra*. Hall testified he inherited the land in 1999 and he left the farming to his tenant because he spent 99 percent of his time doing other things. Hall had no reason to make any claim on the disputed tract until he commissioned a survey in conjunction with his irrigation project in 2014. We find that the auctioneer's announcement that the land was being sold subject to Hall's survey was insufficient to overcome the rightful ownership of the claimed tract. By then

the elements of adverse possession and the time of possession had been satisfied by the O'Connors and the Pasekas. The parties stipulated that the elements of adverse possession existed for 37 years leading up to 2015, of which the last 11 years directly involved the Pasekas. The Pasekas were therefore entitled to possess the entirety of the tract of land they and the O'Connors had farmed.

After reviewing the evidence de novo as we are required to do, we find the district court erred in finding the Pasekas had failed to meet their burden of proof to establish by a preponderance of the evidence that they were entitled to tack on adverse possession of the disputed tract through their predecessors in title. Accordingly, we reverse the findings of the district court and remand the cause for further proceedings on the remaining claims.

CONCLUSION

The order of the district court is reversed, and the cause is remanded for a decision of the district court on the remaining claims of trespass, ejectment, and temporary and permanent injunction.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.