ROLAND K. BERGLUND, APPELLANT, V.
RUTH G. SISLER ET AL., APPELLEES.

313 N.W.2d 679

Filed December 28, 1981.  No. 43534.

Michael R. Snyder of Tvrdik, Brandt & Snyder for appellant.

Ross, Schroeder & Fritzler for appellees.

Heard before BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and BLUE, District Judge.

McCOWN, J.

This is a quiet title action based on a claim of adverse possession. The District Court found that the possession of plaintiff's predecessor was not hostile or adverse as to the defendant Sisler and dismissed plaintiff's petition. Plaintiff has appealed.

In 1962 plaintiff's predecessor in title, Ray Schroeder, purchased approximately 16.6 acres of land in the southeast quarter of Section 32, Township 9 North, Range 16 West of the 6th P.M., Buffalo County, Nebraska. This was an irregular tract described by metes and bounds. The tract lay to the north of a loop in the

Kearney canal right-of-way. The south boundary of Schroeder's land was the south line of Section 32. Immediately to the south and between the Schroeder land and the Kearney canal loop was a strip of land approximately 3 acres in size which was located in Section 5, Township 8 North, Range 16 West of the 6th P.M., Buffalo County, Nebraska. The easterly portion of the strip was owned by the predecessors of the other defendants in this action and is no longer involved in this appeal. Approximately 1½ acres in the westerly portion of the strip was owned by the defendant Sisler.

There was no fence between the land in Section 32 or the strip of land in Section 5, nor between that strip and the canal loop right-of-way to the south. When Schroeder purchased the land in Section 32 he knew that his title did not include a strip of land between the south boundary of Section 32 and the Kearney canal loop, but he did not know where the line was. He tried to contact the owners but the records were uncertain and he did not contact anyone. Shortly after Schroeder purchased his land he put up a three-wire fence along the boundary line between the Kearney canal right-of-way and the strip in Section 5, and fenced it in with his property. He plowed some of the property and planted it to grasses. Thereafter, and until 1978, when Schroeder sold his property to plaintiff, Schroeder pastured horses and occasionally other livestock on the disputed strip and used it as a part of the property in Section 32. The record does not show that Schroeder planted or raised any crops on the land in Section 5.

On June 1, 1962, the defendant wrote to Schroeder, stating: "I have been out checking on my building site west of Kearney. I find that you have fenced my land and plowed up my alfalfa.

"Unless you desire to purchase this site from me, it will be necessary that you remove your fence, and reimburse me for my alfalfa."

In response to that letter, Schroeder wrote to the defendant on June 12, 1962. The letter stated: "I have

yours of June 1st with reference to the plot of ground that joins mine just west of the canal. As you recall, I have talked with you about this matter and I have every desire to work out some arrangement that would be beneficial to both of us. I have had the abstracter spend considerable time trying to ascertain just what everyone owns and it seems to be quite indefinite. I had no thought in mind when I fenced the ground of trying to claim your land as my own, but at the same time I had no way to ascertain just where your line might be. I would appreciate it very much if you would find out just how much ground you actually own that I have fenced, so we will have some basis on which to negotiate.

"As for the alfalfa, I think you are aware of the fact that there was very little, if any, hay of any value and I think it was far better I plow it up and keep down the weeds than to let it go unattended. There must be some way of ascertaining just where your fence line is and I don't believe the obligation is mine, as I own all adjoining ground and want to keep it in cultivation rather than to let it go to weeds.

"I would be glad to talk to you about this matter anytime you find it convenient."

Schroeder and the defendant had some discussions, largely by telephone, during which Schroeder attempted to purchase the defendant's land, but they could not agree on a price. Negotiations continued for approximately a month after the letter of June 12th. In their last conversation Schroeder told the defendant that if she would stake out the boundary of her property, he would fence around it. Nothing further was done by either party.

The defendant testified at trial that she had no objection to Schroeder running horses on her land because she was holding it as a future residence site at the time, and she believed that Schroeder had indicated that he had no claim on her land. The defendant continued to pay taxes on her land and Schroeder paid taxes on his land in Section 32.

In May 1978 plaintiff contracted to purchase the property in Section 32 from Schroeder, and the contract recited that part of the consideration for entering into the agreement was the representation on the part of Schroeder that Schroeder had adversely possessed the 3 acres of land, more or less, that adjoined the real estate to the south, and that the period of adverse possession was in excess of 10 years. Thereafter, on September 17, 1979, Schroeder executed a quitclaim deed to the plaintiff covering the disputed strip.

The District Court found that Schroeder had established his claim of adverse possession as to the eastern portion of the disputed strip, record owners of which were the defendants other than Ruth Sisler, and quieted title in the plaintiff to that portion of the disputed strip. That land is not involved in this appeal. The court found that as to the defendant Sisler, the letter of June 12 and the evidence negate the hostility of Schroeder's possession and eliminate an essential requirement of adverse possession. The District Court found that until Schroeder substantially changed the nature of his claim and communicated the change in some form to the defendant, a period of adverse possession could not commence as against her. The court therefore dismissed plaintiff's petition as to the portion of the disputed strip owned by the defendant.

Plaintiff contends that actual, continuous, exclusive, and notorious possession for the period of 10 years is sufficient to establish adverse possession where the plaintiff testifies that he intended to claim ownership. Plaintiff relies upon cases in which a fence is constructed as a boundary line between the two properties involved in the dispute. Here the fence was put up on the boundary between defendant's property and a third party's property and there was no fence dividing Schroeder's property from defendant's property at any time. The evidence indicates that no one actually knew where the true boundary line was until the properties were surveyed shortly before this action was instituted.

There are two other facts which are distinctly different in this case than in the usual adverse possession case. First, there is the written acknowledgment by Schroeder, after he had taken possession of the disputed strip, that his occupation of defendant's land was not intended to be hostile as to the defendant. Secondly, after Schroeder took possession of the land, he attempted to purchase the disputed property from the record owner. Some jurisdictions have held that efforts to buy property from the record owner constitute acknowledgment of his superior title and thus disprove adverse possession since there is then no claim of right. See *Kerlin v. Tensaw Land & Timber Comp., Inc.*, 390 So. 2d 616 (Ala. 1980). While we do not adopt that rule, it is obvious that such facts may properly be taken into account in determining the intent with which the occupier possesses the land. It should be noted also that although Schroeder testified that he intended to possess the property adversely, he also admitted that the defendant had probably asked him for money for hay that came off the property, but said that he had not paid her because there was no hay to be taken off. Whether tacit permission to pasture horses on defendant's land might be inferred from the record is not clear.

We have continuously held that one who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years. *Barnes v. Milligan*, 200 Neb. 450, 264 N.W.2d 186 (1978).

The *Barnes* case is determinative of the issues involved here. In that case we held that the evidence would permit the trial court to find that the occupation by the adverse claimant was not hostile and that the occupiers of the land did not intend to possess as owners. We also held: "Claim of right or of ownership mean hostile and these terms describe the same element of adverse possession. Ordinarily the intent with which the occupier possesses the land can best be determined by

his acts and the nature of his possession. The statute of limitations will not run in favor of an occupant of real estate, unless the occupancy and possession are adverse to the true owner and with the intent and purpose of the occupant to assert his ownership of the property." *Barnes v. Milligan, supra.*

In the case at bar the evidence was sufficient to permit the trial court to find that Schroeder's occupancy of defendant's land was not hostile, and that he did not intend to possess the property adversely as to the defendant.

The judgment of the District Court is affirmed.

AFFIRMED.