MAURINE COFER, CONSERVATOR FOR ARTHUR M. QUALLEY, ET AL., APPELLEES, v. WILLARD D. KUHLMANN, APPELLANT.

333 N.W.2d 905

Filed May 13, 1983. No. 82-052.

Schneider & Nisley, P.C., for appellant.

Murphy, Pederson, Piccolo & Anderson, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

McCOWN, J.

This is an action in equity under Neb. Rev. Stat. § 34-301 (Reissue 1978) to establish the corners and boundaries between the land of the plaintiffs and the land of the defendant. The District Court determined that the boundary between the lands was the thread of the old south channel of the North Platte River and entered judgment accordingly. The defendant has appealed.

Arthur M. Qualley, appearing through his conservator, and his three daughters, Marilyn Humphrey, Helen Bishop, and Maurine Cofer, are the plaintiffs in this action. The plaintiffs are joint tenants of land lying north and east of the North Platte River in Lincoln County, Nebraska, together with all accretions thereto in the North Platte River to the south and west of said land to the thread or centerline of the North Platte River. Plaintiffs and their predecessors in title have had the continuous ownership and possession of the land for over 50 years.

Defendant is the owner of land which borders plaintiffs' property on the opposite bank of the river, together with accretions in the river to the north and east of defendant's land to the thread or centerline of the riverbed.

In 1870, when government surveyors mapped the North Platte River in this area, there was only one

channel and there were no islands in the river. As the years passed the character of the river changed. Upriver dams, electric works, bridges, and, finally, Kingsley Dam, completed in 1941, greatly changed the seasonal flow of the river and altered the direction and force of the riverbed channels. Numerous new and additional channels, sandbars, and islands were established in the riverbed, including a substantial island which formed in the river between the property of the plaintiffs and the defendant. By 1978 the island was over 100 acres in size, was covered with permanent vegetation, and was separated from the banks of the river by channels on the north and south sides of the island. The determination of the boundary lines of the parties with respect to the island is the basis for this action.

Plaintiffs pleaded that they owned the land to the thread or centerline of the river, and alleged that line was also the geographical centerline as designated by a government survey plat recorded in 1890, based on an 1870 U.S. survey. Plaintiffs also alleged that the defendant and his predecessors in title had recognized the geographical centerline as the true boundary and acquiesced in it for over 50 years. The defendant denied that allegation. The 1890 plat showed only a single channel, which is now the south channel of the river.

Witnesses for the plaintiffs testified as to their personal observations of the depth, direction, and flow of the river channels, and the development and use of the island over more than 50 years. These witnesses agreed that at least from the 1930s through the early 1970s the main channel of the river was always located against the south bank of the stream.

Plaintiffs' witnesses also testified that beginning about 20 years ago several private earthen dams had been constructed in the river upstream from the disputed property, including a dam constructed in 1974 by the defendant on a small channel that had previously crossed the island. The witnesses all agreed

that the construction of the earthen dams, especially the one built by the defendant in 1974, had caused the main channel of the river to be diverted from the south bank to the north bank.

Plaintiffs' evidence established that plaintiffs and their predecessors had used the island continuously for recreation, hunting, and trapping, and to pasture animals and gather fruit. Plaintiffs had occasionally leased the island to others for hunting, trapping, and for pasture. Plaintiffs' evidence also established that on various occasions over the years they had called the sheriff to remove trespassers from the island.

In general, the defendant testified that the main flow of the river had always been in the north channel and that during the 1950s and 1960s the south channel was often dry. Witnesses for the defendant testified that in their experience the deepest channel of the river was on the north side of the island. Most of the defendant's witnesses testified as to a more recent time than the plaintiffs' witnesses concerning conditions on the river.

The defendant admitted that he had constructed a dam on the island in 1974. He testified that there was a barbed wire fence on the north side of the island which he began to maintain in the 1950s, but had not kept up in the last couple of years. Defendant testified that he had also run cattle on the island, burned off the willows, spread grain seed, given permission to hunters to use the land, and "run off" trespassers.

Following trial the District Court found that the allegations in plaintiffs' petition that they owned to the "thread" or "Geographical Center Line" of the river was an erroneous conclusion of the pleader, and the terms were not synonymous. The court found that the term "Geographical Center Line," under Nebraska law, does not establish the thread of the stream, nor establish boundaries, unless by agreement of the parties.

The court therefore interpreted the pleadings to mean that the plaintiffs prayed that the boundary should be the thread of the stream. The court also found that the thread of the stream was contiguous to the south bank of the North Platte River and that it had been diverted by forces other than by nature to the north bank of the river.

The District Court then decreed that the thread of the old south channel of the North Platte River is the thread of the stream, and fixed, determined, and established that line as the boundary, and ordered the boundary line to be surveyed and platted at plaintiffs' expense.

Thereafter, plaintiffs moved for leave to amend the petition to conform the pleadings to the facts proved at trial and to the judgment rendered thereon. The trial court sustained plaintiffs' motion, and an amended petition was filed alleging that the plaintiffs owned accretion lands in the river to the thread of the stream and that the thread of the stream had been diverted from the south bank to the north bank by forces other than nature. Defendant's motion for a new trial was overruled and the defendant has appealed.

The defendant first contends that the plaintiffs' allegations that the "Geographical Center Line" was the true boundary line constituted a judicial admission against plaintiffs' interests and that the plaintiffs were therefore not entitled to the benefit of any evidence which was contrary to that allegation. The defendant takes the position that the court erred in allowing the plaintiffs to introduce evidence as to the thread of the stream or that the true boundary was the thread of the stream in the south channel, and also in allowing the plaintiffs to amend their petition to conform to the evidence.

The record established that the "Geographical Center Line" referred to and identified in plaintiffs' petition was the geographical centerline of 1890 which was, at that time, identical to the thread of

the stream or the centerline of the stream, and the conclusion of the pleader that the terms were currently still the same was clearly incorrect and an erroneous conclusion of law.

Neb. Rev. Stat. § 25-852 (Reissue 1979) provides that the court, in furtherance of justice, may amend any pleading, when the amendment does not change substantially the claim or defense, by conforming the claim or proceeding to the facts proved. Such an amendment may be made even after the evidence has been closed. *Greenberg v. Bishop Clarkson Memorial Hospital*, 201 Neb. 215, 266 N.W.2d 902 (1978).

Neb. Rev. Stat. § 25-846 (Reissue 1979) provides in part: "No variance between the allegation in a pleading and the proof is to be deemed material unless it have actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits."

The record indicates that the parties both presented and tried the case on the theory that the true boundary was to be the thread of the stream, and the bulk of the evidence was concerned with locating the main channel of the river over the years. It cannot reasonably be argued that the defendant was misled or prejudiced in any way.

Under Nebraska law, title to riparian lands runs to the thread of the contiguous stream. Where a river changes its main channel, not by slowly excavating and gradually passing over the intervening space to a new position, but changes it by flowing around intervening land, as by gradually, during many years, deepening a smaller channel which was on the other side of an island until it becomes the main channel, the boundary which was fixed as the original main channel remains, under such conditions, in that original channel. *Valder v. Wallis*, 196 Neb. 222, 242 N.W.2d 112 (1976).

An action to establish boundaries under § 34-301 is an equity action and triable de novo on appeal to this

court. In such appeals, when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *Cline v. Franklin Pork, Inc.,* 210 Neb. 238, 313 N.W.2d 667 (1981).

The defendant also contends that the trial court erred in failing to find that defendant had acquired title to the island by adverse possession. Whether or not the defendant properly pleaded adverse possession, the trial court permitted both parties to present all available evidence as to their use and enjoyment of the disputed island. The defendant, as the party claiming title by adverse possession, has the burden to prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership for the statutory period. *Hutson v. The Rush Creek Land and Livestock Co.,* 206 Neb. 658, 294 N.W.2d 374 (1980).

The record establishes that both parties used the island on various occasions, and there is no evidence that the defendant's possession was ever exclusive. Neither did the evidence establish that the defendant's nonexclusive possession was continuous for any specific statutory period of 10 years.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.