WILLIAM E. NICHOL, APPELLEE, V. KATHERINE HETTINGER, APPELLANT.

408 N.W.2d 302

Filed July 2, 1987.    No. 85-677.

Frederick B. Allan, Jr., and Michael G. Mullally of Allan, Brauer & Mullally, for appellant.

Donn C. Raymond of Raymond, Olsen, Ediger & Ballew, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

The defendant, Katherine Hettinger, appeals from a judgment of the Scotts Bluff County District Court which found that the plaintiff, William E. Nichol, had proved all the elements of adverse possession in an equity action, quieted title to a .43-acre tract of land in Nichol, and awarded Nichol money damages. We reverse.

The undisputed facts are as follows. Nichol and Hettinger are owners of adjoining land in Scotts Bluff County, Nebraska. Nichol acquired his land in 1983 from his parents, who acquired title in 1937 from Nichol's grandfather, who had acquired title in 1929. Hettinger and her husband acquired their land in 1945, and Hettinger was awarded the land in a subsequent divorce

action. In 1929, a triangular 4-acre tract of land in the northeast corner of the Hettinger property was deeded to Nichol's predecessors in title by Hettinger's predecessors in title. A covenant in the deed stated, "It is a part of the consideration hereof that the said Grantee herein, his heirs and assigns [Nichol's predecessors], shall take care of a reasonable amount of the waste water off the adjoining 120 acres of land belonging to the said first party [Hettinger's predecessors]." Nichol's predecessor dug a ditch or "irrigation lateral" along the edge of the property deeded, to comply with the requirements of the covenant. The portion of the lateral between the Nichol and Hettinger farms is located on the .43 acres at issue in the case. The lateral, which remained in essentially the same location since 1929, consisted of dirt banks covered with brome grass. The lateral was used to transport irrigation water across Nichol's farm and to receive waste water from the Hettinger land.

To remove the waste water from the Hettinger land, a series of checks or cuts were made into the bank of the ditch in order for the water to drain into the lateral. When Nichol was using the lateral for irrigation he would close the cuts. Nichol testified that this practice had been continuous since the purchase of the 4-acre tract in 1929.

After 1973, problems with drainage of the Hettinger farm developed, and the difficulties in the cooperative use of the lateral grew worse. Hettinger testified that from 1979 to 1983 there was always waste water standing on her ground. In 1983, Hettinger initiated discussions with Nichol and expressed her desire to remove the banks of the lateral, making the ditch level with the field so her waste water could drain. Hettinger met with Nichol four times in the winter of 1983-84, telling him that "we had to do something with that ditch, it wasn't operating, and we were losing crop and drowning crop and we should do something with the ditch."

When she did not get a satisfactory response from Nichol, Hettinger contacted Orin Bolzer, who testified that Hettinger hired him to "take some bottom end of that field off and cut that ditch bank down and I wouldn't until it was surveyed by somebody else." Thereafter, Hettinger hired Duane Stott, a

registered land surveyor, to determine the exact legal boundary line of her property and the location of the irrigation lateral. The survey report submitted on April 3, 1984, showed the irrigation lateral on the .43 acres in question was located entirely on Hettinger's property.

Bolzer then removed the lateral and leveled the land on the Hettinger side of the surveyor's stakes. After removal of the lateral was completed, Nichol obtained a restraining order against Hettinger. Nichol subsequently had dirt hauled in to replace the lateral banks and reestablish the ditch in the same location as the lateral removed by Hettinger.

On April 27, 1984, Nichol filed a petition to quiet title in the .43 acres of land on a theory of adverse possession, claiming to have been in adverse possession "for more than ten years last past." On May 11, 1984, Nichol filed an amended petition, which was amended by interlineation to add allegations and a prayer for damages for reconstructing the lateral at a cost of $2,478.48.

Hettinger filed an answer on May 25, 1984, generally denying Nichol's allegation and alleging that Nichol's use of the land in question was not adverse to her. Hettinger applied for a temporary restraining order and temporary injunction and filed a motion to set aside the temporary injunction in effect against her. On June 6, 1984, the court overruled both. Later, Hettinger filed a second amended answer and cross-petition, seeking damages for loss of crops and for the costs of surveying the property.

Trial was held to the court on June 24, 25, and 26, 1985. On July 8, 1985, the court entered judgment for Nichol, finding that Nichol had "established adverse possession to the irrigation lateral and all land lying to the north and east thereof; that all right, title and interest in and to the following described real estate is quieted in Plaintiff; to-wit: A tract of land . . . containing an area of 0.43 acres more or less." The court awarded judgment against Hettinger in the amount of $2,478.48 for costs of reconstructing the irrigation lateral removed by Hettinger, and denied Hettinger's amended cross-petition.

After denial of a motion for new trial, Hettinger timely

appealed to this court. The sole error assigned by Hettinger asserts that the court erred "in holding that Appellee [Nichol] had proved all of the elements of adverse possession for the requisite statutory period, in that the evidence before the Court did not substantiate a finding that Appellee had had exclusive possession of the disputed tract."

In determining whether a claimant of title by adverse possession has met the required burden of proof, we review the record de novo and reach conclusions independent of the trial judge. *Matzke v. Hackbart*, 224 Neb. 535, 399 N.W.2d 786 (1987).

One who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership for a full 10-year period. Title cannot be acquired without simultaneous and continuous existence of each element of adverse possession for the required period. *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985).

To determine whether Nichol proved adverse possession in this case, we consider only the "ten years last past" as alleged in Nichol's petition, which would run from April 27, 1974, to April 27, 1984, the date of the filing of Nichol's petition.

Hettinger asserts that Nichol did not have exclusive possession of the .43-acre tract because Hettinger and her tenants engaged in a continual, systematic use of the irrigation lateral to drain her waste water from the time she first acquired title.

Don Stricker, Jerry Kurtz, and George Lunniss, Hettinger's tenant farmers during the 1974 to 1984 time period, testified that they used the irrigation lateral for draining waste water from the Hettinger land. Lunniss testified that he and Robert Pieper, Nichol's tenant from 1974 to the date of the trial, "agreed to try to alternate watering from one end of the farm so that we both wouldn't be trying to use the ditch at the same time." Kurtz testified that in 1979, when he opened the cuts in the lateral to drain waste water, Pieper would close them. Kurtz testified that he opened them again "[b]asically about every day." Stricker testified that during the time he was a tenant farmer for Hettinger, he never had any problems with Pieper

concerning the draining of waste water, and both Stricker and Pieper used the ditch—Pieper for irrigation purposes and Stricker for the drainage of waste water.

Pieper testified that he never denied Hettinger's tenants the right to make cuts in the lateral and never refused to cooperate with a Hettinger tenant.

Nichol himself testified:

> [T]he understanding was that we took their waste water, there is no question about that . . . and whoever needed to drain the water in would open the checks and if he was going to use the ditch, he would use the checks. And it was just common sense whether you would open or close them. And both parties were free to open or close them as they wanted to. Naturally the tenant on the Hettinger farm would not open them when we were using the ditch. Likewise, if we were using the ditch, we would close them.

We stated in *Young v. Lacy, supra* at 514-15, 378 N.W.2d at 195:

> While the law does not require that adverse possession be evidenced by complete enclosure and 24-hour use of the property for the purposes for which it is adapted, there must be an element of exclusivity under a claim of ownership. . . . Title may not be quieted on the theory of adverse possession in the absence of proof of exclusive possession for a purpose to which the land is adapted for the statutory period. . . . There must be evidence of the intention of the claimant to appropriate and use the property as his own to the exclusion of all others.

The record in this case not only fails to show exclusive possession or use by Nichol, but shows that there was a joint use of the property in question by Nichol and Hettinger. "The use and possession of property with the permission of the owner can never ripen into title by adverse possession without some change in the nature of the possession being brought home to the true owner." *Young v. Lacy, supra* at 515, 378 N.W.2d at 195.

Nichol's argument in his brief on appeal that he exercised exclusive control of the lateral is contradicted by his own testimony and by the testimony of both his and Hettinger's

tenants. The record does not show any change in the nature of Nichol's possession of the lateral which was brought home to Hettinger, the record owner of the land in question, which appreciably affected the behavior of Hettinger or her tenants in their use of the irrigation lateral for the statutory 10-year period.

It is clear from the record in this case that Nichol has failed to prove by a preponderance of the evidence that he was in exclusive possession of the .43 acres in question, and therefore has failed to prove adverse possession. Accordingly, the judgment quieting title in plaintiff and awarding plaintiff damages is reversed and the petition dismissed.

REVERSED.