E' LINDA L. THORNBURG AND DEAN E. THORNBURG, WIFE AND HUSBAND, APPELLANTS, V. ROBERT L. HAECKER AND JOYCE E. HAECKER, HUSBAND AND WIFE, ET AL., APPELLEES.

502 N.W.2d 434

Filed July 9, 1993.    No. S-91-061.

Ronald G. Sutter, of Everson, Wullschleger, Sutter, Korslund & Willet, for appellants.

Gary G. Thompson for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.
Defendants, Robert L. Haecker, Joyce E. Haecker, Leroy C. Haecker, Mary M. Haecker, and Anna T. Haecker, seek further review of a judgment of the Nebraska Court of Appeals which quieted title to certain real estate in the plaintiffs, E'Linda L. Thornburg and Dean E. Thornburg. The Court of Appeals' holding reversed a judgment by the district court for Gage County which found that as neither party regarded a fence line as the boundary between their properties, the Thornburgs could not now claim that their use of the disputed property up to that fence line was under a claim of ownership. The case now comes before this court on the Haeckers' petition for further review. We reverse the judgment of the Court of Appeals.

## BACKGROUND
The Gage County properties at issue in this case were originally part of one large tract of land owned by Gilbert Essam. Essam sold the northern parcel of the land to Clarence and Anna Haecker in 1960. Already in existence at that time was a fence which ran east to west across the property. This fence meandered north of the actual boundary line of the property as it was divided after the 1960 sale and was intended

to keep livestock out of a nearby creek, ravine, and wooded area to the south of the fence. Clarence Haecker immediately began keeping cattle, and then sheep, on the area north of the fence.

In 1963, Essam sold the southern portion of the property to E'Linda Thornburg's parents, Warren and Ester Evans. The Evanses leased the southern tract to E'Linda and Dean Thornburg from 1965 until 1973, after which time the Evanses gave the Thornburgs the land. From 1965 to 1982, the Thornburgs pastured cattle on the southern tract up to and around the fence line. It appears, however, that by the 1970's much of the original fence line was in such a deteriorated condition as to be either nonexistent or at least no longer suitable to contain livestock.

Anna Haecker testified that although they were aware of the fence, she and her husband, Clarence, did not consider it the boundary line between the properties. They used a ravine on the south side of the fence as a garbage dump and ran a sewer line from their home into a ditch which was also on the south side of the fence. Dean Thornburg testified that he and Clarence Haecker had a conversation in 1977 or 1978 in which they both agreed that they were uncertain as to where the boundary line was.

From 1983 to 1989, the Thornburgs rented part of the Haeckers' property, including that by the fence line, to pasture cattle. Dean Thornburg testified that when he rented the Haeckers' property he "had no idea that [the fence] was the boundary." In 1990, Thornburg noticed red marker flags near the northern end of his property and, upon talking to the Haeckers, was notified that a survey had been conducted to establish the boundary for a new fence line. The Haeckers intended to move the fence to the actual property line so they would have better access to water. It appears that Thornburg consented to this move as long as the survey was correct.

When Thornburg saw that the fence was being moved considerably south of the old fence line, he approached the Haeckers. Thornburg wanted to make some type of arrangement where the new fence would follow the old fence line, stating that "if [the Haeckers] were giving up more land

than I was giving up on the new boundary, that I would make a settlement with them." No settlement agreement was reached, however.

The new fence was erected on the surveyed line in the spring of 1990, and the Thornburgs thereafter initiated this action to quiet title to the land north of their property up to the old fence line. The district court determined that as neither party regarded the fence as the actual property line, the Thornburgs had not adversely possessed the land. The Court of Appeals reversed the district court's decision (*Thornburg v. Haecker*, 2 NCA 84 (1993)), whereupon the Haeckers petitioned this court for further review.

## ASSIGNMENTS OF ERROR

The Haeckers assign six errors in their petition for further review, alleging that the Court of Appeals erred in (1) finding that the Thornburgs' claim of title began in 1965; (2) finding that *McCain v. Cook*, 184 Neb. 147, 165 N.W.2d 734 (1969), was persuasive authority; (3) finding that the Thornburgs had run cattle up to the fence line with a claim of title based thereon; (4) finding that the fence line was well established and recognizable as a claim of title; (5) failing to recognize that the Haeckers had exercised the rights of ownership over the land to the south of the fence; (6) failing to require actual, continuous, exclusive, notorious, and adverse possession as a requirement to establish adverse title. We will address these allegations in the order in which they were assigned.

## STANDARD OF REVIEW

Adverse possession actions are equitable in nature; therefore, we review the record de novo and reach an independent conclusion without reference to the findings of the trial court. *State Nat. Bank & Trust Co. v. Jacobsen*, 218 Neb. 682, 358 N.W.2d 743 (1984); *Wiedeman v. James E. Simon Co., Inc.*, 209 Neb. 189, 307 N.W.2d 105 (1981).

## ANALYSIS

We have continuously held that one who claims title by adverse possession must prove by a preponderance of the evidence that he or she has been in actual, continuous,

exclusive, notorious, and adverse possession under claim of ownership for the full 10-year statutory period. *Schaneman v. Wright*, 238 Neb. 309, 470 N.W.2d 566 (1991); *Paasch v. Brown*, 217 Neb. 761, 351 N.W.2d 74 (1984). The sufficiency of the possession is dependent upon the character of the land and the use which can reasonably be made of it. *Schaneman v. Wright, supra*; *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985). Title cannot be acquired without simultaneous and continuous existence of each element of adverse possession for the required period. *Nichol v. Hettinger*, 225 Neb. 812, 408 N.W.2d 302 (1987). It is in light of these propositions that we examine the case at bar.

### BEGINNING OF THORNBURGS' CLAIM OF TITLE

The Haeckers first contend that the Court of Appeals erred in finding that the Thornburgs' claim of title began in 1965. The record shows, however, that Dean Thornburg began pasturing cattle on the disputed property in 1965, when he and his wife were tenants on the southern tract. We have held that pasturing cattle on a disputed tract supplies the possession necessary to sustain a claim of adverse possession. *State Nat. Bank & Trust Co. v. Jacobsen, supra*. Although the Thornburgs' possession from 1965 to 1973 was had when they were tenants of the Evanses, the statutory clock was nevertheless set in motion in 1965. A tenant may adversely possess real property in the name of his landlord. See *Bryan v. Reifschneider*, 181 Neb. 787, 150 N.W.2d 900 (1967).

The Thornburgs became the owners of the southern tract in 1973. Therefore, to sustain their claim of ownership by adverse possession from 1965 to 1975, it is necessary for the Thornburgs to tack on the adverse possession of the land by their predecessors in title, the Evanses. In order to tack the possession of predecessors in title, each predecessor occupant must show derivative title from his predecessor in order to link his possession with that taken under a previous entry. *Bryan v. Reifschneider, supra*.

In the case before us, the Thornburgs cannot claim that privity exists with their grantors as to land beyond that described in the deed because of the deed alone.

[T]o permit tacking of successive adverse possession of grantees of an area not within the calls of a deed or contract, but contiguous thereto, among the ultimate facts to be established is the intended and actual transfer and delivery of such area to the grantees as successors in ownership, possession, and claim.

*Rentschler v. Walnofer*, 203 Neb. 84, 93, 277 N.W.2d 548, 554 (1979). "Privity means privity of possession. It is the transfer of possession, not title, which is the essential element." *Bryan v. Reifschneider*, 181 Neb. at 792, 150 N.W.2d at 904. Here, it is clear that possession of the land up to the fence was maintained for the same purposes and by the same persons for at least a 10-year period, even though legal title changed hands in 1973. The necessary privity between the successive possessive interests therefore existed, and the Thornburgs met the 10-year statutory requirement of possession in 1975.

The Haeckers also argue that the Thornburgs could not have possessed the property during this period because the evidence does not show where the fence was at this time. We disagree. The evidence shows that the fence line was well established from 1965 through at least 1975. After that time, sections were moved, replaced, or simply deteriorated to the point that it could no longer be considered a fence. However, this would have occurred after the statutory period and is therefore of no moment to this issue. Accordingly, we find the Haeckers' first assignment of error to be without merit.

### HOSTILE POSSESSION

The Haeckers' next three assignments of error can be distilled into one: The Court of Appeals erred in finding that the fence was considered a boundary line by the parties. The Court of Appeals and the Thornburgs rely heavily upon cases which have held that where a fence is constructed as a boundary line, even though it is not the actual boundary, and a party claims ownership of land up to that fence for the statutory period, that party gains title to such land by adverse possession. See, *McCain v. Cook*, 184 Neb. 147, 165 N.W.2d 734 (1969); *Olson v. Fedde*, 171 Neb. 704, 107 N.W.2d 663 (1961). These cases are easily distinguished from the one at bar, however,

because the parties therein recognized and acknowledged a fence line as the true boundary line. Here, there is no evidence which tends to show that the parties at any time regarded the fence in question as a boundary line.

As noted above, Anna Haecker, who lived on the northern tract from 1960 through 1989, testified that although she was aware of the fence, she never considered it the boundary line between the properties. Neither is there any indication that the Thornburgs ever believed the fence to be the boundary between the properties. In fact, Dean Thornburg testified that he and Clarence Haecker had a conversation in 1977 or 1978 in which they both agreed that they were uncertain as to where the boundary line was located. While such evidence is not determinative of Thornburg's state of mind concerning the fence from 1965 to 1975, it is indicative of the ambivalence that the parties felt concerning the fence and the true boundary line.

In addition, as noted below, evidence that both parties used the disputed land further diminishes the Thornburgs' argument that the fence line was recognized as a boundary by the parties. This court has held:

> "Claim of right or of ownership mean hostile and these terms describe the same element of adverse possession. Ordinarily the intent with which the occupier possesses the land can best be determined by his acts and the nature of his possession. The statute of limitations will not run in favor of an occupant of real estate, unless the occupancy and possession are adverse to the true owner and with the intent and purpose of the occupant to assert his ownership of the property."

*Berglund v. Sisler*, 210 Neb. 258, 262, 313 N.W.2d 679, 682 (1981) (quoting *Barnes v. Milligan*, 200 Neb. 450, 264 N.W.2d 186 (1978)). The Thornburgs' failure to assert their ownership of the property up to the fence line further evidences the fact that they did not recognize the fence as a boundary line. Accordingly, the Court of Appeals' and the Thornburgs' reliance upon *McCain* and other cases where a fence was recognized by all parties as a boundary line was misplaced.

## EXCLUSIVITY OF POSSESSION

The Haeckers' fifth assignment of error alleges that the Court of Appeals erred in failing to recognize that the Haeckers had exercised the rights of ownership over the land to the south of the fence. The evidence shows that the Haeckers used the disputed property as a garbage dump throughout the Thornburgs' claimed period of adverse possession and also that they ran a sewer line from their residence which emptied onto the property during the same period in which the Thornburgs used the property. While the law does not require that adverse possession be evidenced by complete enclosure and 24-hour use of the property for the purposes for which it is adapted, there must be an element of exclusivity under a claim of ownership. *Weiss v. Meyer*, 208 Neb. 429, 303 N.W.2d 765 (1981). We have held that where the record establishes that both parties have used the property in dispute, there can be no exclusive possession on the part of one party. *Cofer v. Kuhlmann*, 214 Neb. 341, 333 N.W.2d 905 (1983). The record here fails to show exclusive possession or use by the Thornburgs, and the Court of Appeals was therefore incorrect in finding otherwise.

## ELEMENTS OF ADVERSE POSSESSION

As their last assignment of error, the Haeckers allege that the Court of Appeals erred in "failing to require actual, continuous, exclusive, notorious and adverse possession as a requirement to establish adverse title." We agree that the Court of Appeals failed to recognize that all of the above elements must exist before title may be had by adverse possession. "Title cannot be acquired without simultaneous and continuous existence of each element of adverse possession for the required period." *Nichol v. Hettinger*, 225 Neb. 812, 815, 408 N.W.2d 302, 305 (1987). It is for this reason that we must reverse the judgment of the Court of Appeals and dismiss the Thornburgs' petition.

The record clearly shows that not all of the criteria for adverse possession have been established in favor of the Thornburgs. While the Thornburgs were in actual and continuous possession of the disputed property for the statutory period, they failed to meet the requirements of

exclusive possession and notorious possession under a claim of ownership. As the element of exclusivity was discussed above, we turn now to the requirement of notorious possession under a claim of ownership.

The case of *Berglund v. Sisler*, 210 Neb. 258, 313 N.W.2d 679 (1981), is controlling. In *Berglund*, as in this case, none of the parties actually knew where the true boundary line was until the properties were surveyed shortly before the action was initiated. Additionally, as here, the adverse claimants in *Berglund* demonstrated that their occupation of the land in dispute was not intended to be hostile when they attempted to purchase the property from the record owner. We held that while these factors were not individually determinative on the issue, when they were viewed as a whole it was clear that the claimant lacked the adverse and hostile intent to possess the land. Accordingly, in addition to the exclusivity requirement, the Thornburgs also lacked the required adverse or hostile possession of the disputed property.

## CONCLUSION

The Thornburgs failed to show by a preponderance of the evidence that they had met each element of adverse possession for the required period. As a result, the Thornburgs have no claim of ownership to any of the land lying north of the common boundary between the parties as described in their respective deeds as surveyed and presumably as divided by the present fence line. The Thornburgs' claim to the disputed area by adverse possession should therefore be denied. The Court of Appeals' judgment is reversed, and this cause is remanded to the Court of Appeals with directions to affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTIONS.