PAT KELLEY, APPELLANT, V. LAURENCE G. LONG AND CAROL LONG, HUSBAND AND WIFE, ET AL., APPELLEES.

529 N.W.2d 72

Filed February 21, 1995.    No. A-93-552.

Nile K. Johnson for appellant.

Jon A. Sedlacek for appellees Long.

IRWIN and MILLER-LERMAN, Judges, and NORTON, District Judge, Retired.

IRWIN, Judge.

This is an appeal from an action to quiet title brought by Pat Kelley against Laurence G. and Carol Long and all others claiming an interest in a certain parcel of land (Long), in the district court for Washington County, Nebraska. Long was the record owner of property to which Kelley sought title by adverse possession. At the close of Kelley's evidence, the court granted Long's motion to dismiss, and Kelley has appealed to this court. We find that because Kelley's predecessor in interest lacked the requisite intent to adversely possess the disputed tract of land, the trial court correctly dismissed Kelley's action.

## FACTUAL BACKGROUND

In 1977, Thomas Mencke purchased property near the Missouri River, described as Tax Lot 25 of Section 7, Township 18 North, Range 12 East of the 6th P.M., Blair, Washington County, Nebraska (Tax Lot 25). Mencke established his residence on the property. A strip of land owned by Consolidated Blenders, Inc., abutted Mencke's land to the east and separated Mencke's property from the Missouri River. This strip, referred to as the "CB tract," was roughly 115 feet wide and was bordered by Fish Creek along its south edge. Mencke used the CB tract for recreational purposes and kept the tract mowed and clear of debris. Mencke also kept his boat at the mouth of Fish Creek, and built a road across the CB tract to gain access to that area and take his boat in and out of Fish

Creek.

In 1980, Mencke strung a cable from near the northeast edge of his lot stretching eastward across the CB tract to a large cottonwood tree. He strung another cable from the cottonwood tree stretching further eastward to a post near where the CB tract met the Missouri River. Mencke erected the cable to keep vehicles from entering the CB tract and to prevent persons from having parties on the tract.

In December 1988, Mencke sold Tax Lot 25 to Pat Kelley. Kelley is employed as a riverboat pilot on the Mississippi River, and his work schedule is 30 days on, then 15 days off, on a continuing basis. His sole residence is located on Tax Lot 25, and he lives there during his time off from work. During the time that Kelley has owned Tax Lot 25, he has kept the CB tract clear of debris, mowed it, and replaced one of the cables across it. He has also used the tract for recreational purposes and has given—and refused to give—permission to persons wanting to fish from the CB tract.

In 1991, Kelley observed Laurence Long on the CB tract and had a conversation with him, during which Long told Kelley that he had purchased the tract from Consolidated Blenders. On August 12, 1991, Kelley filed this action to quiet title in the CB tract on a theory of adverse possession. The case was tried on April 27 and 28, 1993. At the trial, Mencke testified that while he owned Tax Lot 25, he was aware that Consolidated Blenders owned the CB tract. He also testified that he never intended to claim the CB tract as his own and that he erected the cable across the CB tract in order to stop vehicular traffic from going by his house. Both Mencke and Kelley testified that Mencke never indicated to Kelley that he owned the property.

At the end of Kelley's case, Long moved for a dismissal, which was granted by the trial court.

## ASSIGNMENTS OF ERROR

Kelley claims that the trial court erred in granting Long's motion to dismiss and in failing to find that Kelley and his predecessor in title had been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership of the CB tract for the full 10-year statutory period.

## STANDARD OF REVIEW

■ Adverse possession actions are equitable in nature, and an appellate court therefore reviews the record de novo and reaches an independent conclusion without reference to the findings of the trial court. *Thornburg v. Haecker*, 243 Neb. 693, 502 N.W.2d 434 (1993); *State Nat. Bank & Trust Co. v. Jacobsen*, 218 Neb. 682, 358 N.W.2d 743 (1984). See *Nennemann v. Rebuck*, 242 Neb. 604, 496 N.W.2d 467 (1993). However, when credible evidence is in conflict, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Nenneman, supra.* See *Hadley v. Ideus*, 220 Neb. 878, 374 N.W.2d 231 (1985).

■ In a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can be reasonably drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and the plaintiff has made a prima facie case, the motion to dismiss should be overruled. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *Schall v. Anderson's Implement*, 240 Neb. 658, 484 N.W.2d 86 (1992).

■ If, on a motion to dismiss, there is any evidence in favor of the nonmoving party, the case may not be decided as a matter of law. *Knaub, supra*; *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991).

■ Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

## DISCUSSION

■ One claiming title by adverse possession carries the burden of proving by a preponderance of the evidence that he or she has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for the statutory period of 10 years. *Dugan v. Jensen*, 244 Neb. 937, 510 N.W.2d 313 (1994); *Thornburg, supra*; *Nennemann, supra*. Title cannot

be acquired by adverse possession without simultaneous and continuous existence of each element of adverse possession for the requisite period. *Dugan, supra; Thornburg, supra.*

Evidence adduced by Kelley established that both he and his predecessor, Mencke, had actual, continuous, exclusive, and notorious possession of the CB tract. The testimony was uncontroverted that Mencke and Kelley continuously maintained the CB tract by mowing it and removing debris, by putting up and maintaining cable to keep out vehicles, by using the tract for recreational purposes, and by granting and denying others permission to use the tract for fishing. Mencke also built a road across the CB tract for access to the mouth of Fish Creek. Both Mencke and Kelley testified that they had never seen anyone from Consolidated Blenders on the tract and that, to their knowledge, the only other persons to use the tract had obtained permission from Mencke or Kelley.

However, evidence adduced by Kelley did not establish that Mencke's possession of the CB tract was "adverse under a claim of ownership." "To establish 'adverse under a claim of ownership,' the party claiming adverse possession must have occupied the property in the same manner as an owner would occupy the property." *Dugan,* 244 Neb. at 942-43, 510 N.W.2d at 317. Accord *Hardt v. Eskam,* 218 Neb. 81, 352 N.W.2d 583 (1984). "The party claiming adverse possession must have occupied the property ' "with the intent and purpose of the occupant to assert his ownership of the property." ' " *Dugan,* 244 Neb. at 943, 510 N.W.2d at 317 (quoting *Berglund v. Sisler,* 210 Neb. 258, 313 N.W.2d 679 (1981)).

Ordinarily, the intent with which the occupier possesses the land may be determined by examining the acts of the occupier and the nature of his possession. *Dugan, supra; Thornburg v. Haecker,* 243 Neb. 693, 502 N.W.2d 434 (1993). However, an occupier's acts indicating such intent can be negated by an admission that he in fact did not intend to assert ownership of the property. See *Ryan v. City of Lincoln,* 85 Neb. 539, 123 N.W. 1021 (1909). In *Ryan,* the court stated:

> The fact that the tract had been inclosed [sic] by a fence more than ten years preceding 1899, and that plaintiff and his grantors during that time had received all benefits that

accrued from an exclusive occupation of the land, unexplained by other evidence, would unquestionably support a judgment in his favor. Those acts, in the words of Judge GANTT, "are presumptive evidence and evincive of intention to assert ownership over and possession of the property." [Citation omitted.] If, however, that presumption is met by the sworn admission of the occupant that in exercising dominion over the land he did not claim to own it, the presumption will disappear. It is not essential that the occupant accompany his possession with declarations of hostility toward the owner of the fee. [Citation omitted.] His exclusive occupation under a claim of right is sufficient ordinarily to establish an adverse possession. To constitute adverse possession there must be a combination of conduct and intent. *If the actor testifies to his intention and purpose in performing his visible acts of authority over the property, and admits that he did not act under a claim of right or ownership, his testimony may, and as against himself ought to, overcome the conclusions and presumptions that otherwise would have been drawn from his conduct.*

(Emphasis supplied.) 85 Neb. at 541-42, 123 N.W. at 1022.

In the present case, Mencke testified at the trial that his actions of maintaining the CB tract and erecting the cable across it were not undertaken with the intent to claim the property as his own, as is revealed by the following excerpt from his testimony:

Q And in that deposition, I asked if when you did these actions you intended to claim that property for your own, you said "No." Is that still correct?

A Yes.

Q And all of the cable that you put up that you just described, you didn't do that to do that as an act to say, "This is my property," did you?

A No.

Q It was just to stop that traffic that was going by your house, is that correct?

A Yes.

We believe that Mencke's testimony negates any inference of

intent to assert ownership that may otherwise have been drawn from his actions. Further, both Mencke's and Kelley's testimony at trial revealed that Mencke did not intend to transfer or deliver possession or ownership of the CB tract to Kelley.

Kelley purchased Tax Lot 25 in 1988 and allegedly began asserting dominion over the CB tract at that time. Because one must satisfy the adverse possession requirements for 10 years, Kelley must tack on the adverse possession of the land by his predecessor in title, Mencke, in order to be successful in his claim.

> "To permit tacking of successive adverse possession of grantees of an area not within the calls of a deed or contract, but contiguous thereto, among the ultimate facts to be established is the intended and actual transfer and delivery of such area to the grantees as successors in ownership, possession, and claim." [Citation omitted.] "Privity means privity of possession. It is the transfer of possession, not title, which is the essential element." [Citation omitted.]

*Thornburg*, 243 Neb. at 698, 502 N.W.2d at 438. Accord *Rentschler v. Walnofer*, 203 Neb. 84, 277 N.W.2d 548 (1979).

In the present case, the CB tract is not within the calls of the Tax Lot 25 deed from Mencke to Kelley. Further, there is scant evidence that Mencke intended to transfer possession of the CB tract to Kelley. In fact, the testimony of both Mencke and Kelley indicates that Mencke did not intend to transfer possession of the CB tract. Kelley testified that when he bought Tax Lot 25 from Mencke, Kelley knew that it belonged to Consolidated Blenders and that Mencke never represented that he laid any claim to, or had any interest in, the CB tract. Mencke's testimony was similar.

Both Mencke and Kelley did testify that Mencke had told Kelley of his efforts to maintain the CB tract. However, such testimony does not establish that Mencke intended to transfer the CB tract to Kelley as his successor in ownership, possession, and claim.

## CONCLUSION

After reviewing the record de novo, we find that Kelley's

claim of adverse possession must fail, because his predecessor did not intend to possess the disputed property as an owner and further did not intend to transfer possession of the land to Kelley. Accordingly, we affirm the district court's dismissal of this action.

AFFIRMED.