586 N.W.2d 284 (1998)
255 Neb. 347
The RUSH CREEK LAND AND LIVE STOCK COMPANY, Appellant,
v.
Jack CHAIN, Trustee of the Beth Hudson Chain Revocable Trust dated January 22, 1982, et al., Appellees.
No. S-97-551.
Supreme Court of Nebraska.
September 25, 1998.
*286 Robert S. Harvoy and Robert B. Reynolds, of McGinley, Lane, O'Donnell, Reynolds & Edwards, P.C., Ogallala, for appellant.
Robert G. Simmons, Jr., of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellees.
CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ., and HANNON, Judge.
CONNOLLY, Justice.
The Rush Creek Land and Live Stock Company, hereinafter Rush Creek, brought this action against Jack Chain, trustee of the Beth Hudson Chain Revocable Trust dated January 22, 1982, and Beth Hudson and other trustees and successor trustees of the trust, collectively denoted as "the trust," to quiet title to a certain island. The island at issue lies generally in the North Platte River between Rush Creek's property and the trust's property. Rush Creek asserted that its title to the island had been determined in a prior action and that res judicata applied. The trust denied Rush Creek's assertions and contended that the trust has adversely possessed the island. We conclude that the trust has adversely possessed the island, and thus we affirm.

I. BACKGROUND

1. TRIAL COURT'S 1979 JUDGMENT
In 1977, Melvin T. Hutson and Lou Hutson (Hutsons) brought an action against Rush Creek, The Federal Land Bank of Omaha, and John H. Chain (Chain) to quiet title to certain real property. The Hutsons owned real property described as Sections 7 and 8, Township 18 North, Range 47 West of the 6th P.M., which lies along the south bank of the North Platte River. See Hutson v. The Rush Creek Land and Livestock Co., 206 Neb. 658, 294 N.W.2d 374 (1980). Rush Creek owned and still owns real property described as Sections 5 and 6, Township 18 North, Range 47 West of the 6th P.M., which is along the north bank of the river, directly opposite what was the Hutsons' property. Chain was a contract purchaser of the Hutsons' property. The disputed property lay along the North Platte River, which separated the Hutsons' property and Rush Creek's property.
The Hutsons' action to quiet title to the disputed property was based upon adverse possession. In its answer, Rush Creek generally denied the Hutsons' adverse possession and brought a counterclaim to quiet title to all of Sections 5 and 6, Township 18 North, Range 47 West of the 6th P.M. "together with all accretions thereto located north of the thread of the North Platte River as it flows through the aforesaid sections of land."
In its judgment, rendered in 1979, the trial court found the Hutsons had failed to prove they had adversely possessed the disputed property. The trial court found in Rush Creek's favor on the counterclaim as well, quieting title in Rush Creek to "Section [sic] 5 and 6, Township 18 North, Range 47 West of the 6th P.M. located in Morrill County, Nebraska, together with all accretions thereto located north of the thread of the stream of the North Platte River as it flows through aforesaid sections of land."
Chain appealed the 1979 judgment to this court, asserting that the trial court had erred in determining that the Hutsons had not adversely possessed the disputed property, and this court affirmed. Hutson v. The Rush Creek Land and Livestock Co., supra. This court did not address the trial court's findings concerning the counterclaim. Id.

2. TRIAL COURT'S 1997 JUDGMENT
The instant case was brought by Rush Creek in 1995 to quiet title to a certain island in the North Platte River, designated as "island X" on exhibit 53, and to permanently enjoin the trust from the use of island X. The trust's answer generally denied Rush Creek's petition and asserted that it had adversely possessed island X.
The dispute concerning possession of island X arose during the hunting season. Rush Creek had leased its property to certain individuals for hunting, and the trust had done likewise. The lessees of both parties believed that they had the right to hunt *287 on island X. This conflict led to verbal disputes between the lessees and eventually resulted in this lawsuit.

(a) Geography of Island X and Surrounding Channels
Following is a sketch of the pertinent section of the North Platte River depicting the island at issue, which is labeled "X," and other features relevant to this appeal. The sketch is for illustrative purposes only and does not purport to be drawn to scale.
 Island X lies in the North Platte River, a nonnavigable stream which flows generally west to east at the island's location. Island X is bounded by channels on the north and the south; the channel to the north separates the island from Rush Creek's property, and the channel to the south separates it from the trust's property. Island X lies east of the section line running north and south dividing Sections 5 and 6 and Sections 7 and 8, such that it lies generally between Sections 5 and 8. Another island, designated as "island Y," lies generally to the northwest of island X. The channel separating island Y from the northern shore (Rush Creek's property) flows into the channel north of island X near island X's midpoint.
The record does not indicate that the government ever issued a patent to the island, and thus, we assume that the island formed at some point after the original government survey. The Hutsons did not claim adverse possession of island X in the 1979 judgment; rather, island Y was at issue.

(b) Adverse Possession of Island X
Gary L. McGuire testified that he hunted Rush Creek's property from 1980 to 1983 with his father, who held a lease at that time, and that he had personally held a hunting lease to Rush Creek's property since 1983. McGuire's blind was on the north bank of the channel north of island X, and he had never had a blind on island X. McGuire had likewise never used any decoys on island X. However, McGuire did testify that he had hunted island X on foot. He also testified that he knew Mark T. Wieser had a blind on island X, with whom McGuire had arguments concerning hunting rights. Wieser had told McGuire that he had no right to be on island X.
William Eckstrom, another hunter, testified that he had leased Rush Creek's property for hunting purposes since 1990. He testified that he had a hunting blind on island X in 1991 which was moved by the ice in the river and that he had also hunted island X on foot. Eckstrom had a confrontation with Wieser concerning hunting rights on the island in 1992. Eckstrom had set up a blind *288 closer to Wieser's than in the past, which led to some disputes over the shooting of birds. When Eckstrom attempted to speak to Wieser about the problem, Wieser told him that he had been there forever and that if Eckstrom did not like it, he could move.
Thomas H. Olson, Rush Creek's vice president, testified that Rush Creek had not used island X for pasturing cattle at any time since 1978. After the 1979 judgment, Rush Creek built a fence on island Y, but did not fence island X. Olson testified that it was too difficult to build and maintain a fence across the channels and onto island X. Olsen stated that it was not too difficult to build a fence over the channel north of island Y, because the channel was not nearly as wide. Island X was pastured by the trust and was fenced into the trust's pasture to the south. However, Rush Creek did pasture island Y and the unnamed island south of island Y.
Steve Wiggins, a tenant of the trust's who had leased Sections 7 and 8 since 1977, testified that he had pastured cattle on island X since 1977 and that no one else had ever pastured cattle there. Island X has been included in the fencing of the trust's pasture on the south bank of the North Platte River since 1978. Rush Creek built a fence along the south bank of island Y after the 1979 judgment. Wiggins also testified that Wieser had a blind on the east end of island X and that nobody else had hunted on the island until the last couple of years. According to Wiggins, Rush Creek's lessees built a blind on a sandbar in the channel north of island X but did not have a blind on the island. The blind was washed out by the river.
Wieser testified that he had leased island X for hunting since 1971. He first leased the island from a certain "John McDaniel," Chain's predecessor in title, and then from Chain in 1977, from whom he has leased ever since. Wieser built a blind on island X in 1971 and continually improved it. At the time of trial, Wieser's blind consisted of a 14-foot steel tank buried at ground level with the top cut off, fiberglass inside and out, carpet, a restaurant range grill, gas heat, and roll lids.
According to Wieser, nobody else has ever had a blind on the island. McGuire and his dad had put a metal tank on a towhead off the north bank of island X, but two-thirds of it is now submerged. It was used for only about 2 years, and no one has used it for the last 7 or 8 years. He never saw anyone else hunt on island X except to look for downed or wounded birds. Wieser told other hunters that they had no business hunting on island X. He also had confrontations with McGuire and the other hunters using blinds on the north bank of the channel north of island X "whenever it was necessary."

(c) Trial Court's Order Concerning Island X
Prior to trial, Rush Creek filed a motion for summary judgment. However, the record shows no hearing was ever held on the motion. In 1997, the trial court, by journal entry, generally found in favor of the trust and against Rush Creek, thereby denying Rush Creek's request for relief and dismissing the action.

II. ASSIGNMENTS OF ERROR
Rush Creek asserts that the trial court erred in (1) overruling Rush Creek's motion for summary judgment, (2) concluding that the prior litigation was not res judicata on all or part of the issues adjudicated, (3) concluding that the boundary line between the parties' properties was located in the channel of the North Platte River north of island X, and (4) concluding that the trust adversely possessed island X.

III. SCOPE OF REVIEW
A quiet title action sounds in equity. Neb.Rev.Stat. § 25-21, 120 (Reissue 1995); Gustin v. Scheele, 250 Neb. 269, 549 N.W.2d 135 (1996). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Bauermeister v. McReynolds, 253 Neb. 554, 571 N.W.2d 79 (1997), modified on *289 other grounds 254 Neb. 118, 575 N.W.2d 354 (1998).

IV. ANALYSIS
The instant case was brought as an action to quiet title. However, both parties concede that in the 1979 judgment the trial court quieted title in Rush Creek to Sections 5 and 6, Township 18 North, Range 47 West of the 6th P.M., together with all accretions thereto located north of the thread of the North Platte River as it flows through the aforesaid sections of land. Thus, both parties are in agreement as to Rush Creek's legal title. The dispute in the instant case concerns where the boundaries of that legal title are physically located. As such, this is a boundary dispute, not a title dispute. See McBride v. Whitaker, 65 Neb. 137, 90 N.W. 966 (1902), aff'd, Whitaker v. McBride, 197 U.S. 510, 25 S.Ct. 530, 49 L.Ed. 857 (1905). "`A dispute in which each owner admits the title of the other but disagrees as to the physical location of the boundary is not a title controversy.'" Hall v. Allen, 771 S.W.2d 50, 52 (Mo.1989) (en banc), quoting Roberts v. Harms, 627 S.W.2d 924 (Mo.App.1982). See, also, Ollison v. Village of Climax Springs, 916 S.W.2d 198 (Mo.1996) (en banc); Carroz v. Kaminiski, 467 S.W.2d 871 (Mo.1971) (en banc).
Boundary disputes cannot be determined in a quiet title action. McBride v. Whitaker, supra; Mollie v. Peters, 28 Neb. 670, 44 N.W. 872 (1890); Gregory v. Lancaster County Bank, 16 Neb. 411, 20 N.W. 286 (1884). See, also, Ollison v. Village of Climax Springs, supra. Rather, boundary disputes are properly brought as an action in ejectment or pursuant to Neb.Rev.Stat. § 34-301 (Reissue 1993). McGowan v. Neimann, 139 Neb. 639, 298 N.W. 411 (1941); Kittell v. Jensen, 37 Neb. 685, 56 N.W. 487 (1893). See, also, Gill v. Lydick, 40 Neb. 508, 59 N.W. 104 (1894). However, this court has long held that when the parties pursue a boundary dispute as a quiet title action without objection, the mode of procedure is no longer in question. McBride v. Whitaker, supra; Baumann v. Franse, 37 Neb. 807, 56 N.W. 395 (1893); Gregory v. Lancaster County Bank, supra. Because the parties in the instant case pursued this dispute as a quiet title action, we shall treat it as such, and our review will be de novo.

1. ADVERSE POSSESSION
A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership for the statutory period of 10 years. Gustin v. Scheele, 250 Neb. 269, 549 N.W.2d 135 (1996). Title cannot be acquired without simultaneous and continuous existence of each element of adverse possession for the required period. Thornburg v. Haecker, 243 Neb. 693, 502 N.W.2d 434 (1993).
The parties do not dispute that the trust had actual, continuous, notorious, and adverse possession of island X under a claim of ownership for the statutory period of 10 years. However, Rush Creek asserts that the trust's possession was not exclusive, citing Hutson v. The Rush Creek Land and Livestock Co., 206 Neb. 658, 294 N.W.2d 374 (1980).
In Hutson, this court stated that "`title may not be granted or quieted on the theory of adverse possession in the absence of proof of exclusive possession for a purpose to which the land is adapted for the statutory period of 10 years ....'" Id. at 661-62, 294 N.W.2d at 376. We noted that the Hutsons had established the elements of adverse possession as to the use of the land for pasturage. However, the Hutsons had not established exclusive possession of the land for hunting purposes. Because the Hutsons could not show adverse possession as to every purpose for which the land was adapted, the Hutsons failed to establish title by adverse possession. See id.
In the instant case, it is clear that the trust, through its lessee, established the elements of adverse possession as to the use of island X for pasturage. The question is whether the trust had exclusive possession of the island for hunting.
A tenant may adversely possess real property in the name of his landlord. Thornburg *290 v. Haecker, supra. Thus, the fact that Wieser was merely a lessee does not foreclose the trust's claim of exclusivity.
Where both parties have used the property in dispute, there can be no exclusive possession on the part of one party. Id. However:
"The law does not require that possession shall be evidenced by a complete enclosure, nor by persons remaining continuously upon the land and constantly from day to day performing acts of ownership thereon. It is sufficient if the land is used continuously for the purposes to which it may be in its nature adapted."
Nennemann v. Rebuck, 242 Neb. 604, 608-09, 496 N.W.2d 467, 471 (1993), quoting Weiss v. Meyer, 208 Neb. 429, 303 N.W.2d 765 (1981).
In the instant case, the evidence clearly indicates that Rush Creek's lessees never built or maintained a blind on island X. McGuire and Eckstrom admitted that Wieser had told them they had no right to hunt the island. Both McGuire and Eckstrom stated that they had hunted the island on foot, but neither indicated whether he had hunted the island on foot prior to the time the disputes began. Moreover, Wieser never saw anyone else hunting the island other than to pick up wounded birds. Finally, according to Wiggins, no one other than Wieser had hunted on the island until the last 2 years.
Based on the above testimony, we conclude, pursuant to our de novo review, that Rush Creek's lessees never hunted the island, either on foot or in a blind, prior to the advent of their disputes with Wieser, sometime in the early 1990's. Thus, the trust had exclusive possession of island X from at least the 1979 judgment until 1990. Because the trust exclusively possessed the island for more than 10 years and met all of the other requirements of adverse possession, Rush Creek's title to island X, whatever it may have been, has been extinguished.

2. RES JUDICATA AND BOUNDARY LINE
Having concluded that the trust's adverse possession of island X extinguished whatever title Rush Creek had, we need not address Rush Creek's assignments of error concerning res judicata and the location of the original boundary line. The trust's adverse possession of the island has rendered moot the question of whether the boundary line between Rush Creek's property and the trust's property was north or south of the island, since Rush Creek is without title in either case.

3. SUMMARY JUDGMENT
Rush Creek's assignment of error concerning its motion for summary judgment is without merit.

V. CONCLUSION
We conclude that Rush Creek's title to island X was extinguished by the trust's adverse possession. Accordingly, Rush Creek's assignments of error are without merit.
AFFIRMED.
WHITE, C.J., and WRIGHT, J., not participating.